**ATEX MANUFACTURING COMPANY,**
**Plaintiff,**

**v.**

**"LLOYD'S OF LONDON," "Non-Marine Underwriters at Lloyd's of London," and Insurance Research Service, Inc., Defendants.**

**Civ. A. No. 536.**

United States District Court
W. D. Arkansas, Texarkana Division.

Nov. 21, 1955.

Charles C. Wine and LeRoy Autrey, Texarkana, Ark., for plaintiff.

Arnold & Arnold, W. H. Arnold, III, Texarkana, Ark., for defendants, Lloyd's of London and the Non-Marine Underwriters at Lloyd's of London.

Shaver, Tackett & Jones, Boyd Tackett, Texarkana, Ark., for defendant Insurance Research Service, Inc.

LEMLEY, Chief Judge.

This cause is before the Court upon the jurisdictional pleas filed herein by the defendants, "Lloyd's of London," properly referred to simply as "Lloyd's," and the "Non-Marine Underwriters at Lloyd's of London," hereinafter called the "Non-Marine Underwriters," and likewise upon the motion for summary judgment on the merits that has been filed by the defendant, Insurance Research Service, Inc. Those matters have been submitted upon the pleadings and briefs, the deposition of one of the officials of Lloyd's taken in England on interrogatories, documentary evidence and oral testimony taken on August 22, 1955. From our consideration of said matters, we have come to the conclusion that the jurisdictional pleas above mentioned should be sustained and that the motion for summary judgment filed by Insurance Research Service, Inc., hereinafter called "Research," should also be sustained. In short, we are satisfied that the case should be dismissed in its entirety for lack of jurisdiction over Lloyd's and the Non-Marine Underwriters and upon the merits as far as Research is concerned.[1]

Atex Manufacturing Company, the plaintiff herein, an Arkansas corporation, brought this action against Lloyd's, the Non-Marine Underwriters and Research for the purpose of recovering upon an alleged oral contract of insurance in the amount of $10,000 covering certain of its properties at Stamps, Arkansas, which were destroyed by a fire which took place in September, 1952.

---

1. The Court's opinion in this case was originally incorporated in a letter addressed to all counsel in the cause dated November 21, 1955, a signed copy of which was filed with the Clerk as the Court's memorandum opinion. Subsequently the Court was requested by counsel for Lloyd's to convert said letter opinion into a formal memorandum suitable for publication, which has now been done.

**316**

The complaint alleges in substance that Lloyd's and the Non-Marine Underwriters are English insurance companies; that Research, a Missouri corporation, was at all pertinent times an agent of Lloyd's and of the Non-Marine Underwriters, and that one W. W. Andrews of Hope, Arkansas, was an agent of Research; that on September 9, 1952, Andrews "acting as an authorized agent for the defendant, * * * Research * * *, and having authority to enter into binding contracts of insurance on behalf of * * * Lloyd's * * * and the Non-Marine Underwriters * * * did enter into a binding oral contract with the plaintiff for insurance against loss or damage by fire upon the plaintiff's building, plant and inventory in the amount of $10,000; that it was agreed on that date * * * that said contract of insurance would take effect immediately * * * and that a policy of insurance * * * effective for a period of one year from that date * * * would be made and delivered to the plaintiff within a reasonable time in the usual form of such policies issued by the defendants, Lloyd's * * * and the Non-Marine Underwriters * * * that the plaintiffs * * *

offered to pay the premium for said policy of insurance on that date, but upon assurance of * * * Andrews * * * that the said contract of insurance would be binding, effective immediately, and that premium on said policy of insurance should be paid when the plaintiff was billed in due course * * *." It is further alleged that such policy was never delivered, that the building of the plaintiff burned on September 25, 1952, that on that date Research was advised of the loss; that within 60 days the other defendants were likewise notified but they have refused to make payment under the alleged policy and are liable for the face amount thereof, plus interest and statutory penalty and attorney's fee.

The action was originally commenced in the Circuit Court of Lafayette County, Arkansas, and service on all three defendants was attempted under the provisions of Arkansas Stats., Section 66–244(a);[2] service on Research was likewise attempted by having a summons issued for service on the Secretary of State of the State of Arkansas under the provisions of Ark.Stats.1947, Section 27–340,[3] upon the theory that Re-

2. That section is as follows: "The transacting of business in this state by a foreign or alien insurer without a certificate of authority and the issuance or delivery by such foreign or alien insurer of a policy or contract of insurance to a citizen of this state or to a resident thereof, or to a corporation authorized to do business therein is equivalent to an appointment by such insurer of the Insurance Commissioner and his successor or successors in office, to be its true and lawful attorney, upon whom may be served all lawful process in any action, suit or proceeding arising out of such policy or contract of insurance, and the said issuance or delivery is a signification of its agreement that any such service of process is of the same legal force and validity as personal service of process in this state upon it." Act 181 of 1939, Section 5.

3. Insofar as here pertinent, that section is as follows: "Any * * * corpora-

tion not qualified under the Constitution, and Laws of this State as to doing business herein, who shall do any business or perform any character of work or service in this State shall, by the doing of such business or the performing of such work, or services, be deemed to have appointed the Secretary of State, * * * to be the true and lawful attorney or agent of such non-resident, upon whom process may be served in any action accrued or accruing from the doing of such business, or the performing of such work, or service, * * *. Service of such process shall be made by serving a copy of the process on the said Secretary of State, and such service shall be sufficient service upon the said non-resident of the State of Arkansas, provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff, or his attorney, to the defendant at his last known address, and the defendant's written return receipt,

search was a foreign corporation doing business in the State. Prior to service of the summons on the Secretary of State, however, Research removed the case here; after removal plaintiff sued out an alias summons upon Research which was served upon the Secretary. After Research had filed its petition for removal it was joined therein by the other defendants.

The jurisdictional allegations of the complaint may be summarized as follows:

That all three of the defendants are alien and foreign insurers doing business in Arkansas through the agency of W. W. Andrews; that Research was the agent of Lloyd's and of the Non-Marine Underwriters and had the authority to bind those defendants; that Andrews was the agent of Research and had been authorized by it to enter into contracts of fire insurance within the State of Arkansas binding upon Lloyd's and the Non-Marine Underwriters.

Based upon those allegations, all of which are denied by the defendants, the plaintiff contends that the alleged oral contract of insurance entered into between Andrews and the plaintiff on September 9, 1952, amounted to the issuance or delivery of a contract or policy of insurance within the meaning of Arkansas Statutes, Section 66–244, and that by virtue of the service of summons upon the Insurance Commissioner, all three defendants are properly before the Court.

In passing upon the questions presented by the record before us it must be kept in mind that the plaintiff's whole theory, both as to jurisdiction over the persons of the defendants and as to the merits, is based upon the premise that in September of 1952 W. W. Andrews was the agent of Research, which defendant, in turn, so it is contended, was the agent of the other defendants, and that Andrews had the power and au-

thority to enter into contracts of insurance binding upon all of the defendants. It is not here contended that any of the defendants had any dealings or connections with Atex Manufacturing Company other than through the said Andrews. At the hearing that was held on August 22, however, Andrews, who was called as a witness by the plaintiff and upon whose testimony its case obviously hung, testified definitely and without any contradiction that at no time here pertinent had he been the agent of any of the defendants, and he admitted that he had no power to bind them. With that testimony the plaintiff's premise that has been mentioned fell to the ground, and that testimony is, in our eyes, dispositive of the entire case; had the hearing on August 22 been a plenary trial before a jury, we should have been required at its conclusion to direct a verdict in favor of all of the defendants.

■ With particular regard to the jurisdictional pleas of Lloyd's and of the Non-Marine Underwriters, it appears that the alleged jurisdiction of this court is based entirely upon service of summons upon the Arkansas State Insurance Commissioner pursuant to the provisions of Section 5 of Act 181 of 1939, Ark.Stats. Section 66–244(a), above quoted. In order for service under that statute to confer jurisdiction over the person of a defendant, it must appear that the defendant is an "insurer," and, further, that it has issued or delivered a policy or contract of insurance to the plaintiff, who must be a citizen or resident of Arkansas.

■■ Assuming for purposes of argument only that Lloyd's is an insurer, and further assuming for the same purpose that the Non-Marine Underwriters, as a group, constitute a suable entity and are also an insurer, the undisputed evidence here is to the effect that neither of them ever issued or delivered to the plaintiff any policy or contract of

or the affidavit of the plaintiff, or his attorney, of compliance herewith are appended to the writ or process and en-

tered in the office of the Clerk of the court wherein said cause is brought: * * * "

insurance, either written or oral. As has been stated, Andrews admitted that he was not an agent of either of those defendants or of Research, and that he had no power to bind any of them; and there is no evidence whatever that any of the defendants ever took any action or made any representations which would indicate that Andrews was its agent. Hence, no dealings that Andrews might have had with Atex would have of themselves constituted the issuing or delivering of a policy or contract of insurance by any of the defendants, and it is upon such dealings that the plaintiff solely relies. It may be true that Andrews represented to Atex that he had the authority to bind the defendants, and that the risk in question was covered. But it is elementary law that agency cannot be established by the acts or declarations of a purported agent; and contractual relationships and obligations cannot be created by the unauthorized acts or declarations of a third party, lacking real or apparent authority, unless the party to be bound ratifies the same, which is not the case here. It is true that Andrews did submit to Research an application for fire insurance covering the Atex properties, but the uncontradicted evidence is to the effect that such application was never accepted; and it is obvious to us that in submitting that application Andrews was acting on behalf of Atex rather than on behalf of any of the defendants. As a matter of fact, not only was the application never accepted, but Mr. Rorie, the then President of Research, testified that Andrews was advised that the application would not be accepted in the form in which it was submitted nor until an advance payment of premiums was made; while Andrews professes to have no recollection of having received that advice, he admitted that his files had been out of his possession for some time, and he was unwilling to categorically deny receipt thereof.

But aside from the foregoing, we are satisfied from the evidence which, at least from a practical standpoint, is uncontradicted that neither Lloyd's nor the Non-Marine Underwriters is an "insurer" within the meaning of the statute, and we are also satisfied that the phrase "Non-Marine Underwriters at Lloyd's of London" does not describe any entity capable of being sued.

■ While the statute above referred to does not define the term "insurer," it seems evident that it refers to a person, corporation or association that "insures"; and the evidence here shows that neither Lloyd's nor the Non-Marine Underwriters, as a group, makes, issues or delivers any policies or contracts of insurance. The deposition of Mr. Everitt of Lloyd's, which has not been impeached, is to the effect that Lloyd's itself is not an insurance company, but more or less the governing body or society of the insurance business in England. Counsel for Lloyd's has drawn in his brief what appears to be an apt comparison between Lloyd's and a stock exchange; such an exchange does not itself buy or sell securities, but its members do. So, "Lloyd's insurance," as it is known, is written not by the defendant, Lloyd's, but by individual underwriters doing business at Lloyd's and who are members of the Society. As to the Non-Marine Underwriters, the evidence shows that the term "Non-Marine Underwriters at Lloyd's of London" does not describe any group of people joined together for the accomplishment of a common purpose or for the pursuit of a joint enterprise; it is purely a generic term which describes a large number of individual underwriters or underwriting firms which write non-marine insurance and who are members of Lloyd's. While they are all engaged in a common calling, they do not pursue such calling jointly or as a unit any more than do the doctors who may practice at a particular hospital or lawyers who may practice in a particular court.

■■ But even if it be granted that the Non-Marine Underwriters constitute

an unincorporated association which is an insurer, the plaintiff is confronted with the well-settled Arkansas rule that such an association cannot be sued as an entity. That principle of Arkansas law was recognized in Lewelling v. Manufacturing Wood-Workers Underwriters, 140 Ark. 124, 215 S.W. 258, an insurance case. It is true that there suit was permitted against an unincorporated association engaged in the business of "interinsurance"; and it was held that such association was suable as an entity by virtue of the provisions of Act 152 of 1915, Ark.Stats. Sections 66–901 et seq. But in the instant case no reciprocal or interinsurance is involved, and it is not felt that the statute just mentioned is applicable.

 Taking up now Research's motion for summary judgment, it has already been pointed out that the undisputed testimony of W. W. Andrews himself is to the effect that he was not the agent of Research and had no power to bind it, and it is also undisputed that no contract or policy of insurance was ever in fact entered into or issued by Research to the plaintiff. It is true that in passing upon a motion for summary judgment it is not the function of a court to try any disputed question of fact, but simply to determine whether or not there exist any genuine issues as to any material facts; but a genuine issue of fact is not made out merely by allegations in the pleadings or by the contentions of counsel; and where, as here, the Court is satisfied that the facts in the case, as disclosed by the pleadings, affidavits, admissions, depositions and other matters considered, are such that it would be required upon a trial of the case to direct a verdict for the moving party, then no genuine issue of fact exists, and summary judgment should be granted. We so held in the case of Poole v. Gillison, D.C.Ark., 15 F.R.D. 194; see also Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881; Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269; Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101;

and 6 Moore's Federal Practice, 2d ed., p. 2128. As stated, if the evidence taken on August 22 had been presented to a jury, we should have been required to direct a verdict in favor of the defendants, including Research; it is not suggested in opposition to the latter's pending motion that upon a trial of the case the plaintiff would be able to make any additional or stronger proof than it has already made; and it is obvious under the circumstances presented here that it cannot do so.

Let an order in accordance with the foregoing be entered.