CITY OF MARIANNA *v.* GRAY.

4-9755                                                    248 S. W. 2d 379

Opinion delivered May 5, 1952.

*G. H. Burke* and *F. N. Burke, Jr.,* for appellant.

*D. D. Panich,* for appellee.

MINOR W. MILLWEE, Justice. Plaintiff is a retail dealer in electrical supplies, fixtures and appliances at 114 West Main Street in Marianna, Arkansas. He brought this suit to enjoin defendants, the City of Marianna and its mayor, from installing any parking meters on the north side of the street in the block in which his business is located until a suitable loading and unloading zone accessible to plaintiff is established in said block. Defendants demurred on the ground that the facts alleged in the complaint were insufficient to state a cause of action.

The chancellor overruled the demurrer. Upon defendants' refusal to plead further a decree was entered ordering defendants to establish a suitable loading and unloading zone on the north side of the street in said business block and provide a fifteen minute time limit for its use.

In his complaint plaintiff alleged due passage by the city council on February 21, 1951, and subsequent approval by the electorate, of an ordinance authorizing the purchase and installation of parking meters at places in the city designated by defendants; that on December 12, 1949, prior to enactment of said ordinance, the city council passed a resolution approving a restricted parking zone in front of plaintiff's store and that such resolution was in effect until rescinded by said council on June 5, 1951; and that, after passage of the parking meter ordinance, plaintiff's petition to establish a loading and unloading zone on the north side of said business block was rejected by the council.

Other material allegations of the complaint are as follows: "Plaintiff states that the size of his store is approximately 30' x 11.9' as shown by a plat hereto attached and made a part hereof and marked Exhibit "A"; that as shown by said plat, plaintiff has no means of ingress and egress to his store except through the

front door thereof and that he cannot obtain any other means of ingress and egress. . . .

". . . that defendants have caused 13 spaces to be marked off for the installation of parking meters on the north side of West Main Street in the block numbered from 106 to 124 West Main Street; that the said 13 spaces as so arbitrarily marked off and designated for the installation of parking meters fails to leave a zone restricted to loading and unloading and completely embraces the front of plaintiff's store thereby depriving plaintiff of any means of ingress and egress to his store; that by the direction of the defendants work has commenced upon the installation of said parking meters and holes have been drilled into the concrete sidewalk. . . .

"Plaintiff states that the defendants have acted in a discriminatory manner in that defendants have designated certain parking spaces for the exclusive use of the physicians of said city without designating any loading or unloading zones or other free parking spaces for plaintiff and the citizens of the defendant city; that the spaces so marked and designated for the installation of meters are not the same size throughout the areas so designated and that said spaces as marked are excessive in length.

"Plaintiff states that he has no adequate remedy at law, and that unless the defendants are restrained and enjoined from proceeding with the installation of said meters in accordance with the spaces so marked and designated on the north side of West Main Street in accordance with defendants present plans, plaintiff will suffer irreparable damage and injury to his business and will also suffer special injury in damages for which he has no adequate remedy at law."

After the transcript was lodged in this court on appeal, plaintiff filed in the trial court a motion for an order *nunc pro tunc* to make a plat referred to as Exhibit "A" in the complaint a part of the record. The motion alleged that said exhibit had in some manner become detached from the original complaint and lost or

misplaced and that said plat was exhibited before the court at the hearing on the demurrer. The chancellor's denial of the motion is not against the preponderance of the evidence which is to the effect that said plat was never attached to the pleadings or otherwise made a part of the record.

The only question presented is whether the complaint alleges sufficient facts to show that the action of the city council in designating locations of parking meters and in revoking the restricted zone in front of plaintiff's place of business was arbitrary or discriminatory. While every reasonable intendment should be indulged to support a pleading, it is also well settled that a demurrer admits only facts well pleaded and does not admit conclusions of law. *Seubold* v. *Fort Smith Special School District,* 218 Ark. 560, 237 S. W. 2d 884. Hence, we have held that allegations of a complaint that assessments by an improvement district are arbitrary, unreasonable, inequitable, or discriminatory are mere statements of conclusions and insufficient to state a cause of action for judicial review of such assessments unless facts are set out which substantiate such conclusions. *Moore* v. *No. College Avenue Imp. Dist. No. 1,* 161 Ark. 323, 256 S. W. 70; *Henderson* v. *Rd. Imp. Dist. No. 1 of Hot Spring County,* 171 Ark. 8, 283 S. W. 39.

Our statutes (Ark. Stats., §§ 19-2313, 19-2401 and 19-3801) confer on municipalities the power and duty to make reasonable provision for the safety of persons and property using the streets, and the city council or other municipal authority has a wide discretion in such matters. *City of Fort Smith* v. *Van Zandt,* 197 Ark. 91, 122 S. W. 2d 187. In the Van Zandt case a tourist court owner near the center of a block sought to enjoin the city from constructing a dividing curb along the center of a boulevard in front of his place of business. The owner demanded that an opening be left opposite his property so that north bound traffic could turn left in the center of the block and enter his property without the necessity of driving to the next intersection and returning. In ordering dismissal of the cause the court said: "We cannot

agree that the resolution adopted is either arbitrary, unreasonable or discriminatory. It may be true that appellee's property will be adversely affected, but no more so than any other property similarly situated. On the contrary, it appears to be reasonably necessary for the safety of persons and property and for the proper control or handling of traffic. . . . We, therefore, hold that, under the rules stated in the cases above cited, it cannot be said that said resolution is manifestly unreasonable or that it so interferes with appellee's business or property as to be oppressive. He cannot be more harmed than any other property owner who owns property in the middle of the block. To sustain appellee's contention would be virtually to give him the benefits and advantages of a corner lot which he does not own. Also, to sustain him would be either to discriminate against others similarly situated or to give them cross-overs in the middle of the other blocks, which latter would be to destroy the very purpose of the center curb."

In the case of *State ex rel. Latta* v. *Marianna,* 183 Ark. 927, 39 S. W. 2d 301, the court said: "Such are the varied uses and conflicting interests of city life that, as is said in *Ex parte Foote,* 70 Ark. 12, 65 S. W. 706: 'Much must necessarily be left to the discretion of the municipal authorities, and their acts will not be judicially intefered with unless they are manifestly unreasonable and oppressive, or unwarrantably invade private rights or clearly transcend the powers granted them.' In the case of *Sander* v. *Blytheville, supra,* (164 Ark. 434, 262 S. W. 23), the court said: 'The city council, likewise, has a similar discretion in determining what character of structure may be erected and maintained upon, over, or under, the streets, alleys and sidewalks of the city so long as such structure does not constitute *per se* a common nuisance.' "

In *Wellborn* v. *Davies,* 40 Ark. 83, a physician sought to enjoin an obstruction to a road which he claimed damaged him by the inconvenience he incurred in visiting his patients and the court said: "The inconvenience to the complainant in visiting his patients, however often he may be called to do so, is not different from that which

every citizen suffers, whose business or pleasure may call him to travel the road. It is of the same character, only perhaps different in degree, from that which others suffer, who have other business, and live further away. This will not sustain his right of action."

Ordinances providing for parking meters have been upheld generally as against contentions that the particular ordinance illegally and unreasonably interfered with the rights and privileges of abutting land owners and occupants or that it did not allow abutting proprietors to park in front of their own premises without paying the fee. 60 C. J. S., Motor Vehicles, § 28 e(1).

The allegations of the complaint in the instant case place plaintiff in a position similar to that of the plaintiff in *Clark* v. *New Castle*, 32 Pa. D & C, 371, where the court said: "The law . . . recognizes the right of plaintiff, Mr. Clark, to stop in front of his place of business for the purpose of loading or unloading passengers or merchandise, but the law cannot guarantee him the right to do so whenever he desires. Such right cannot be guaranteed him except by refusing all other persons the right to park in front of his premises. This the exigencies and complexities of modern life will not permit." See, also, *Andrews* v. *City of Marion,* 221 Ind. 422, 47 N. E. 2d 968.

We have held that an abutting owner of real property may enjoin a city council from permitting anyone from making any permanent encroachment on the city streets where he alleges and proves special injury by being deprived of egress and ingress to and from his property. *Lincoln* v. *McGehee Hotel Co. Inc.,* 181 Ark. 1117, 29 S. W. 2d 668, and cases there cited. In reliance on these cases plaintiff argues that the action of defendants amounts to an attempt on their part to put him out of business by arbitrarily refusing him any means of ingress or egress to his store, but the allegations of his complaint are insufficient to sustain this contention.

The complaint alleges that, "as shown by said plat", plaintiff has and can obtain no other means of ingress and egress to his store "except through the front door".

It is further alleged that in arbitrarily marking off spaces for installation of meters defendants failed to leave a zone restricted to loading and unloading which thereby deprived plaintiff of any means of ingress or egress to his store. The plat was never made a part of the record. It simply does not follow that plaintiff would be deprived of all means of access to his store by the installation of the parking meters. Plaintiff has the same right to park in front of his place of business as does anyone else. It is true, as in the Van Zandt case, that plaintiff's rights may be adversely affected but the rights of the public to use the streets require some curtailment of the unlimited rights of ingress and egress of the abutting owner or proprietor. Insufficient facts are alleged to substantiate the charge that failure to provide a loading and unloading zone will deprive plaintiff of all means of ingress or egress to and from his store, or that a parking meter in front of his store would constitute a permanent barrier of accessibility. Parking meters are usually installed on the theory that freer and more unhampered rights of ingress and egress may be afforded the entire public.

The exercise of the broad discretion granted municipal governing bodies in matters pertaining to the use of the streets and sidewalks of a city may not be overturned by the courts except on a clear showing that the action taken or refused was arbitrary, unreasonable or discriminatory. We conclude that insufficient facts were alleged by plaintiff to support the conclusion that defendants abused their discretion in the instant case. It follows that the chancellor erred in overruling the demurrer. The decree is accordingly reversed and the cause remanded with directions to sustain the demurrer to the complaint.