SOUTHWESTERN PUBLISHING Co. *v.* NEY.

5-1276                                                   302 S. W. 2d 538

Opinion delivered May 20, 1957.

[Rehearing denied June 24, 1957]

*Daily & Woods* and *Shaw, Jones & Shaw,* for appellant.

*Eichenbaum, Scott & Miller,* and *Thomas Harper,* for appellee.

CARLETON HARRIS, Chief Justice. American Television Co., Inc., (hereinafter called American) held a

construction permit issued by the Federal Communications Commission for a Channel 5 television station in Fort Smith. H. S. Nakdimen was the sole stockholder and president of American. Appellee, George T. Hernreich, held an option to purchase 50% of the stock of American. Hernreich and American agreed, by written contract, to assign said construction permit to appellant for a monetary consideration subject to approval of the Federal Communications Commission.[1] The assignment agreement obligated appellant, American, and Hernreich to file application seeking FCC's approval of the assignment, and to further cooperate in preparing and filing additional information or amendments to the application for the purpose of obtaining the Commission's approval. The assignment provided that the agreement between the parties should be void unless the Federal Communications Commission approved the application for the assignment of the permit by February 1, 1955, except said agreement be extended by the contracting parties. All parties did agree to such extension in writing, setting the new expiration date as April 1, 1956. Shortly after the extension agreement, Mr. Nakdimen died. Appellee, Jerome M. Ney, as chairman of a group styled "Citizens Group for Two Television Stations in Fort Smith," filed a petition with the Commission asking that the group be permitted to intervene as a party to the proceedings, and requesting that the Commission reopen the record, set the matter for oral argument, set aside the initial decision, and remand the proceedings to the examiner for further hearings.[2] Because of the requests of this group, the Commission, on its own motion, set the matter for oral argument, which was heard on March 20. Since it appeared that a decision on the approval of the assignment might not be rendered before April 1st, appellant sought a further extension from the officers and directors of

---

[1] Separate forbearance agreements were also entered into between appellant, Hernreich, and American Television Co., whereby the latter two agreed that for a period of seven years they would not engage in broadcasting at Fort Smith or in any community within a radius of 150 miles of said city.

[2] On September 29, 1955, the hearing examiner of the Commission had approved the assignment of the construction permit to appellant.

American and from Hernreich. This was refused. On June 20th, the Commission entered its order providing: "In our view, all the pleadings now before us for disposition, filed by Southwestern, are moot by virtue of the expiration of the assignment contract, and accordingly, they must be denied." Appellant thereafter filed suit against appellees, later amended its complaint, and subsequently amended the amended complaint, seeking damages in the sum of $250,000. A further prayer was "that it be adjudged and decreed that any interest in or right to acquire the aforesaid television construction permit for Channel 5 at Fort Smith, held by the defendants or either of them, is held unlawfully and is impressed with a constructive trust in favor of plaintiff." Appellees filed their separate demurrers to the complaint, amended complaint, and amended amended complaint, stating that such pleadings did not state facts sufficient to constitute a cause of action. Said demurrers were sustained by the court and the complaint dismissed; from such action comes this appeal.

Let us first examine the allegations against appellees which appellant relies upon as stating the cause of action. It is alleged that Ney "* * * with full knowledge and understanding of the provisions of said assignment agreement and the duties and obligations therein imposed on the defendant, Hernreich, maliciously and unlawfully interfered in said assignment agreement between the parties thereto and induced the defendant, Hernreich, to join with him in a conspiracy to breach the terms of that agreement to the injury of the plaintiff. * * *" It is alleged that Hernreich, though required by his agreement to cooperate to obtain the approval of the construction assignment, entered into said conspiracy to breach the terms of the agreement; that "* * * All such acts of conspiracy on the part of the defendants were performed with malice and with the purpose of preventing approval of said assignment during the life of said agreement and to the end that said assignment agreement would expire unapproved in order to permit the defendants, in their scheme and plan, as a part of said conspiracy, to ac-

quire said construction permit for their own monetary gain to the loss of and damage to the plaintiff. As a further part of their said conspiracy, the defendants jointly and severally undertook to persuade and induce the holders and beneficial owners of the stock of American Television Co., Inc., under the Will of Mr. Nakdimen, to cause its officers and directors to decline to execute any further extension of said agreement and so to cause said agreement to expire unapproved by the Commission. * * *'' It is further alleged that ''* * * the defendants and each of them, separately and together, made trips to Washington, D. C., seat of the Federal Communications Commission, and employed a former attorney of the plaintiff to prepare pleadings to be filed with the Federal Communications Commission containing derogatory charges concerning the plaintiff to the end that the approval of the above described assignment would be delayed before the said Commission until the expiration of said assignment agreement. The defendants did cause to be filed with the Federal Communications Commission pleadings urging and encouraging the Commission to deny approval of said assignment and reciting that should same be denied by the Commission that the defendant, George T. Hernreich, would individually, or in concurrence with the American Television Co., Inc., construct said station under the permit theretofore issued to American Television Co., Inc., * * * and induced numerous and sundry other persons, including employees of each defendant, to join with them in petitions to the Commission in order to withhold, delay and deny approval of said assignment. Said numerous and sundry third parties who were persuaded by the defendants to join with them in said application to the Commission were induced to do so by insincere representations made to them by the defendants that the defendants were acting solely in the public interest in an endeavor to procure two television stations in Fort Smith, Arkansas, and that the defendants had no other interest when, in truth and fact, the defendants' purpose and design was to acquire the Channel 5 construction permit for their own personal

monetary gain and to injure the plaintiff. * * *''
Further, ''* * * The defendants by written plead-
ings and other direct and indirect representations per-
suaded the Commission to hold an oral argument on
the said assignment. By this act and the other acts and
tactics performed and committed by the defendants as
above recited, they succeeded in causing delays and post-
ponements and interruptions in the normal proceedings
of the Federal Communications Commission in its hear-
ings on the application for approval of said assignment
beyond April 1, 1956, thereby succeeding in their plan
and conspiracy to prevent final Commission approval of
said assignment before the expiration of the last exten-
sion of said assignment agreement; and except for said
acts of the defendants, the Federal Communications
Commission, in the normal course of its proceedings,
would have granted final approval of said assignment
prior to April 1, 1956. * * *'' Still further,
''* * * The Federal Communications Commission
would have finally approved the assignment to the plain-
tiff of the construction permit for the operation of a
Channel 5 television station in Fort Smith, Arkansas,
under the terms of said assignment agreement, in the
absence of the acts on the part of the defendants here-
inabove alleged, and the plaintiff would have thereupon
acquired the right to construct said station under said
permit. As a result of the malicious, unlawful, unjusti-
fied and concerted acts of the defendants hereinabove
alleged, the plaintiff has lost the right to acquire and
obtain the construction permit for the operation of a
Channel 5 television station in Fort Smith, Arkansas.
* * *'' The trial court held that no cause of action
had been alleged against either appellee.

We will first dispose of appellee's argument that
the demurrers should be sustained for the reason the
entire assignment contract was wholly invalid. This con-
tention is based on the concurrent forbearance agree-
ment between appellant and Hernreich that appellant
would pay to Hernreich the sum of $35,000 in return for
his agreement not to engage in broadcasting within
Fort Smith or any community within a radius of 150

miles for a period of seven years. Appellees contend that this constituted illegal restraint of trade, and the entire agreement was therefore void. This matter was not mentioned by the trial court·in its rather exhaustive opinion, and we consider it sufficient to state that the complaint does not put into issue the validity of the forbearance agreement. No one seeks to enforce the agreement, or to rescind or cancel it; *i. e.,* no relief is sought by any party with reference to same.

In holding that no cause of action had been stated against Hernreich, the court said:

"* * * The issue appears to be whether or not an allegation which is not susceptible of proof is to be accepted by the court as one which is well plead and admitted by a demurrer. It appears incumbent upon the court to accept the position that no litigant should be permitted to hold another at bay in court to await trial when the allegations of the complaint are, on their face, not susceptible of proof. * * * Since it must be conceded that Hernreich was under no duty to agree to an extension, the case must rest squarely upon the proposition that the Federal Communications Commission would have granted the assignment but for the acts of the defendant Hernreich. Is this ultimate issue susceptible of proof? This court must, after full deliberation, answer this question in the negative. In reaching this conclusion, the court is of the opinion that the proof necessary to sustain the plaintiff's contention could come only from one source, the Federal Communications Commission itself, and learned counsel's representations, sincere and earnest though they are, cannot convince the court that a Federal agency such as the Federal Communications Commission would either gratuitously, or by order of this court, investigate and rule on what they would or would not have done under all of the contingencies of this situation, and do so simply to accommodate the parties to this lawsuit. A candid and objective appraisal of the many considerations that would be involved in such a course, without enumeration here, makes it apparent that this requisite avenue of proof

would, and as a matter of principle could not be, opened as a course of evidence in causes such as the one at bar. The litigants may speculate and conjecture as to what this Governmental agency would or would not have done if the game had been played differently, but the courts are not a forum for such disputes. * * *''

We entirely concur that Hernreich was under no duty to grant an extension and also agree that in order to obtain a substantial recovery, it is mandatory that appellant prove that, but for the acts complained of, the Federal Communications Commission would have granted the assignment. But we are not here dealing with a matter of proof. We are only dealing with a matter of allegations. Therefore, *we are not presently concerned with whether the allegations can be proved.* The reasoning of the trial court as to the difficulties in proving this necessary assertion may well be correct, but whether such averment can be sustained is immaterial at this time. As stated by the court in the case of *Weiner* v. *Eastern Airlines,* 330 Mass. 337, 113 N. E. 2d 859, 40 A. L. R. 2d 806: ''* * * Whether the plaintiff will be able to sustain by evidence the case made out in the declaration is a matter not to be decided on demurrer. * * *'' Likewise, in *Attorney General* v. *Trustees of Boston Elevated Railway Co., et al.,* 319 Mass. 642, 67 N. E. 2d 676, the court said: ''* * * We take the allegations at their face value in determining their sufficiency when challenged by a demurrer. The question is not as to the adequacy of evidence to prove the alleged conduct of the trustees, but is whether, assuming the allegations to be true, the information sets forth a cause of action. * * *'' It is well settled by our own cases that a demurrer admits facts that are well pleaded.[3] *Wann* v. *The Reading Company,* 194 Ark. 541, 108 S. W. 2d 899. Every reasonable intendment should be indulged to support a pleading. *City of Marianna* v. *Gray,* 220 Ark. 468, 248 S. W. 2d 379. Allegations of complaint on demurrer must be given such effect as they appear *prima facie* to have. *Church of*

---

[3] For the purpose only of determining the sufficiency of the pleadings.

*God in Christ* v. *Bank of Malvern,* 212 Ark. 971, 208 S. W. 2d 770. The validity of the complaint against Hernreich is not dependent upon the existence of the alleged conspiracy, for his alleged acts, standing alone, constitute a cause of action. We conclude that a cause is stated against Hernreich.

We come now to a consideration of the court's action in sustaining the demurrer as to Ney. If the complaint states a cause of action against this appellee, it must be on the basis of the alleged conspiracy, wherein it is averred that Ney "* * * with full knowledge and understanding of the provisions of said assignment agreement and the duties and obligations therein imposed on the defendant, Hernreich, maliciously and unlawfully interfered in said assignment agreement between the parties thereto and induced the defendant, Hernreich, to join with him in a conspiracy to breach the terms of that agreement to the injury of the plaintiff. * * *"

*Corpus Juris Secundum,* Vol. 15, 996, states: "A civil conspiracy means a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means. * * *" In Words and Phrases, there are several definitions of the term. In addition to the one quoted above, (which is the most usual definition), we find at page 425, Vol. 8,: "A 'conspiracy' is a combination of two or more persons by some concerted action to accomplish an unlawful purpose." At page 418 of the same Volume: "A 'conspiracy' is the combination of two or more persons to do something that is unlawful, oppressive, or immoral, or something that is not unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, or something that is unlawful, oppressive or immoral, by unlawful, oppressive, or immoral means."

While in some instances, we recognize that an unlawful purpose[4] can be reached through a series of law-

---

[4] This court has held that to breach a contract is unlawful. *Lion Oil Co.* v. *Marsh,* 220 Ark. 678, 249 S. W. 2d 569.

ful acts, generally the acts which are committed in furtherance of accomplishing the unlawful purpose are either illegal acts, or acts tainted with elements of deceit, trickery or chicanery. The acts attributed to Ney are legal acts. It was not unlawful for him to oppose the granting of the permit — it was not unlawful for Ney to get others to join in the protest—it was not unlawful for Ney to employ an attorney to file with the Commission a petition protesting the approval of the assignment. Though malice is alleged in the complaint, and while in the Iowa case of *Kuiken* v. *Garrett,* 243 Iowa 785, 51 N. W. 2d 149, it was held that legal conclusions may properly be alleged where supported by proper allegations, we are unable to say that the allegations herein meet that requirement. Not only were the acts of Ney, standing alone, entirely legal, but such acts were in furtherance of a hearing before a public forum. This conduct is entirely the antithesis of acts generally committed in a plot to injure some individual. Here, there was no "cover up", nor artifice. Ney proclaimed to the world that he was against the assignment of the contract.

It is true that our Court, as early as 1908, in the case of *Mahoney* v. *Roberts,* 86 Ark. 130, 110 S. W. 225, held that persons who aid another to violate a contract with a stranger, whether for the purpose of injuring the latter, or for the purpose of benefiting themselves at the latter's expense, to his injury, are guilty of an actionable wrong, and are liable for damages. Again in *Hogue* v. *Sparks,* 146 Ark. 174, 225 S. W. 291, this Court said: "* * * that if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the injured party may institute an action against the wrong-doer. * * *" Other Arkansas cases are cited to the same effect, but when all are analyzed, it appears that in each instance such cases involved either the enticement of laborers from their contract (which is prohibited by statute as well as common law) or the element of trickery, deceit or chicanery was present. For instance, in *Mahoney* v. *Roberts, supra,* Roberts and Ma-

honey dissolved their partnership, and Mahoney, for a consideration, agreed with Roberts that he would not engage in business in competition with Roberts in Argenta, Arkansas. Mahoney, being unable to engage in said type of business directly, without violating his agreement, conspired with one Collins to operate the same (type of business) in Collins' name, and ostensibly as Collins' business. Collins proceeded to carry out his part of the plan, though Mahoney furnished all equipment and actually owned the business. The complaint alleged a conspiracy to carry out the ''fraudulent enterprise,'' and sought judgment against Collins, as well as Mahoney, because of said conspiracy. Collins was held liable for inducing and assisting Mahoney to violate his agreement. This is entirely a different set of facts from those alleged in the instant litigation; likewise, the facts in *Hogue* v. *Sparks, supra,* are vastly different.

We will not say that a conspiracy, which is to culminate in the commission of an unlawful act, cannot be reached by a series of acts, in themselves lawful, but we do say that the acts alleged here against Ney in furtherance of the alleged conspiracy, do not constitute such as to allege a cause of action.

Civic minded citizens may well petition and appear before tribunals to protest the granting of radio or television permits, the elimination of air, railway, or bus services, the increase of rates by public utilities, and similar instances too numerous to mention. They may well appear before Congressional and Legislative Committees to voice their opposition to legislation desired by some individual, corporation, or business establishment. We do not desire to establish a rule in this state which would discourage individuals from exercising their privileges as free citizens. As stated by the trial court in its opinion: ''* * * The constitutional guarantees of liberty of opinion and freedom of speech would soon be impaired if citizens exercising those rights were to be compelled to defend their actions in expensive litigation, instituted by persons who resented and characterized the exercise of such rights as interfer-

ence in their private affairs. * * *'' Concluding, when the words ''maliciously'' and ''unlawfully'' are removed, the complaint fails to state a cause of action against Ney, and those words, standing alone, do not supply the deficiency. The action of the court in sustaining Ney's demurrer was entirely proper.

Appellant contends that the court erred in dismissing the amended complaint, as amended, without giving it the opportunity to plead further. The trial court's opinion was filed October 5, 1956, and the precedent (approved as to form by appellant's attorneys) was filed on October 11th. Without entering into a detailed discussion of the alleged error, let it suffice to say that the record does not reflect any request for permission to again amend or to plead further. We consider appellant's contention to be without merit.

For the error in sustaining the demurrer and dismissing the complaint as to appellee Hernreich, the judgment of the Circuit Court is reversed, and the cause is remanded with directions to overrule the demurrer as to Hernreich and for further proceedings not inconsistent with this Opinion.

Justices WARD and ROBINSON dissent to the reversal as to Hernreich.

Justices McFADDIN and GEORGE ROSE SMITH dissent to the affirmance as to Ney.

PAUL WARD, Associate Justice (dissenting). In my opinion the action of the trial court should be sustained as to Hernreich. I just can't imagine how appellant can ever possibly prove what the Federal Communications Commission would have done. From any angle you look at it, the majority is entering a field of speculation, and we have often said that speculation is no sound basis for a jury verdict. Consequently, as I see it, this court should assume its responsibility to prevent unnecessary litigation with all its attending expense. We have said many times, also, that courts will not do a vain and useless thing, yet I believe the majority is doing just that in this case.

Not only is it incumbent on appellant to prove (in a new trial) that the Federal Communications Commission would have approved the assignment, but it must prove also that the approval would have been given before April 1, 1956. Here is where the majority find themselves in a dilemma. On the above date the Federal Communications Commission either had all the information it desired, or it did not have. In the first eventuality it could have approved the transfer if it had wanted to do so (but it did not). In the latter eventuality it would be ridiculous to predict what the Federal Communications Commission would have done because there is no way of knowing what information it might have received later.

It is significant to note the exact wording in appellant's complaint. The first clause in paragraph XI reads: "The F e d e r a l Communications Commission would have *finally* (emphasis mine) approved the assignment . . ." As already pointed out, this allegation is not sufficient to state a cause of action.