ELIZABETH HOSPITAL, INC., Plaintiff,

v.

Fount RICHARDSON, Friedman Sisco, Ruth Ellis Lesh, Stanley Applegate, Individually and as President of Washington County Medical Society, Washington County Medical Society, and American Medical Association, Defendants.

No. 375.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Nov. 6, 1958.

James R. Hale, Fayetteville, Ark., for plaintiff.

Rex W. Perkins, Fayetteville, Ark., Warren & Bullion, Little Rock, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The plaintiff, a hospital incorporated under the laws of Delaware and authorized to do business in Arkansas, brought this suit on May 28, 1958, against the Washington County Medical Society, the American Medical Association, and several individual members of the Washington County Medical Society, to recover damages for alleged violations of the Anti-Trust Acts, Title 15 U.S.C.A. §§ 1, 2, 12, and 15, and to obtain a mandatory injunction requiring the defendant associations to admit one Dr. Frank Riggall to full membership. The plaintiff also alleges a violation of the constitution, statutes, and common law of Arkansas, thus offering a two-fold basis for jurisdiction, first, under the Clayton Act, Title 15 U.S.C.A. § 15, and, second, on the ground of diversity of citizenship. The individual defendants are all residents of Arkansas and of the Fayetteville Division of the Western District as is the Washington County Medical Society. The defendant, American Medical Association, is a nonprofit organization organized under the laws of Illinois, where it maintains its principal place of business.

Except that the plaintiff hospital alleges violations of common, statutory, and constitutional law of Arkansas, the factual allegations of the complaint are virtually identical with those contained in a recent case, wherein the plaintiff was Dr. Frank Riggall, decided by this court on March 28, 1957, and affirmed in Riggall v. Washington County Medical Society, 8 Cir., 1957, 249 F.2d 266.

Briefly stated, the plaintiff alleges that its stockholders are Frank, Eva, and Cecil Riggall, and Robert Douglas Manning, each of whom owns 25 percent of the capital stock; that it operates a hospital as Prairie Grove, Arkansas, which is approved by various schools and organizations, and which purchases and uses large quantities of various medical instruments, drugs and medicine purchased from suppliers in various states outside of Arkansas. The plaintiff alleges that its Chief of Staff is Dr. Frank Riggall, who was the plaintiff in the former suit, and, after setting forth in detail his qualifications and experience in the practice of medicine, alleges a combination, confederation, and conspiracy on the part of the defendants which substantially interferes with the referral of patients to the plaintiff hospital from other physicians outside the State of Arkansas.

The conspiracy alleged is based upon the refusal of the Washington County Medical Society to admit the plaintiff's Chief of Staff, Dr. Frank Riggall, to membership. The defendant, Washington County Medical Society, is a member of the defendant, American Medical Association, which is described as a "federacy of its constituent associations." No person who is not a member of a local association is eligible for membership in the American Medical Association under its constitution and bylaws. The plaintiff alleges that membership in such association by its Chief of Staff, Dr. Riggall, would be of great economic benefit to the plaintiff and to its patients and that because of the denial of membership, Dr. Riggall is not allowed to become a member of the staff of certain hospitals and obtain other substantial benefits for himself and for the plaintiff hospital. The alleged conspiracy to deny Dr. Riggall membership in the Washington County Medical Society, which refused his membership after a vote of the membership of the association, is claimed to have resulted in a substantial interference with, a restraint of, and burden on trade and commerce

between Arkansas and other states and countries. In 24 subparagraphs, denoted (a) through (x), numerous effects of the refusal of admission of Dr. Riggall to membership in the Society are set forth. The gist of these allegations is that Dr. Riggall and members of the plaintiff's staff are denied staff privileges in several hospitals, are prevented from obtaining consultations with members of the Society, and from receiving referrals of patients from physicians outside of Arkansas, and that numerous efforts have been made by some of the defendants seeking revocation of licenses of physicians employed by the plaintiff hospital. In paragraph numbered 22(q) of the complaint, the plaintiff charges that the defendants "imposed a professional boycott upon the plaintiff and thereby prevented the plaintiff from receiving great numbers of patients from outside the State of Arkansas and elsewhere."

On June 19, 1958, all of the defendants except the American Medical Association moved to dismiss the complaint on the grounds that the complaint failed to state a claim upon which relief could be granted, that the court had no jurisdiction under the Sherman Anti-Trust Act because it had no application to the allegations of the complaint, that the allegations were identical with those in the case of Riggall v. Washington County Medical Society, and that the courts have no jurisdiction over the admission or rejection to membership in private clubs.

On July 9, the defendant, American Medical Association, moved to dismiss for lack of jurisdiction over it, improper venue, and insufficiency of process, and also upon the ground that the complaint failed to state a claim upon which relief could be granted. Briefs of all of the parties are now in, and those motions are now before the court.

It appears that the motion of the American Medical Association must be sustained. Title 15 U.S.C.A. § 22, provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Process was served upon the American Medical Association at its principal place of business in the State of Illinois by serving a summons upon its office manager. There is no allegation in the complaint that the American Medical Association transacts business or can be found in the State of Arkansas. The venue provision set forth clearly indicates that suits based upon the anti-trust acts may be brought against a corporation only where it may be found or where it transacts business or in the district of which it is an inhabitant. The complaint affirmatively shows that the defendant, American Medical Association, is an "inhabitant" of the State of Illinois. Unless the relation of the American Medical Association with its local member associations is such that the Washington County Medical Society is an agent of the American Medical Association, nothing in the complaint can be construed to indicate any "presence" of the American Medical Association in Arkansas, or the transaction of any business in this State by that corporation. The American Medical Association, as shown by its constitution and bylaws, is a "federacy" composed of the member associations. So far as the complaint reflects, the local associations may be obliged to follow the constitution and bylaws of the American Medical Association, but are not otherwise controlled by the American Medical Association. Under these circumstances, the American Medical Association is no more "present" in the state by virtue of the presence of a local independent member than the United States is present by virtue of the presence of a state government which is a member of the Federal Union. Just as a state is not an agent for the Government of the United States, the Washington County Medical Society is not an

agent of the American Medical Association, at least so far as the complaint shows. Since the service of process was obtained in the manner prescribed by Title 15 U.S.C.A. § 22, and since that section has no applicability in this instance, the process is insufficient to confer jurisdiction upon this court as to the American Medical Association unless process directed outside the district is authorized on some other ground. Rule 4(f), Fed.Rules Civ.Proc., 28 U.S.C.A., provides:

"All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state."

If there is any other statute authorizing such process as was issued in this case, it has not been called to the court's attention. The court, therefore, concludes that it has no jurisdiction of any claim against the American Medical Association.

■ With regard to the remaining defendants, substantially the same issues were raised in Riggall v. Washington County Medical Society, 8 Cir., 1957, 249 F.2d 266, at page 268, where the court said:

"It is to be noted that the complaint is confined to plaintiff's private medical practice. It charges no economic burden on the public by reason of the alleged acts of the defendants. There is no charge that the rejection of plaintiff's application for membership in the Washington County Medical Society resulted in the raising or fixing of fees charged the public by other physicians. There is no allegation in the complaint remotely suggesting that the acts of defendants cast any burden upon interstate commerce. The mere fact that plaintiff at his location in Arkansas may be treating patients from other states who must travel interstate does not result in practicing his profession in interstate commerce as the transportation of such patients is incidental. The practice of his profession as disclosed by the allegations of his complaint is neither trade nor commerce within Section 1 of the Sherman Anti-Trust Act, nor are there any allegations in the complaint indicating that the actions of defendants here complained of resulted in a monopoly within the provisions of Section 2 of the Act. Plaintiff has not been prevented from practicing his profession, but in the final analysis his complaint is that he could practice it more profitably but for the acts of the defendants. The Sherman Anti-Trust Act was not primarily to protect the individual but to protect the general public economically, and a private party may not recover under the act unless there has been an injury to the general public economically. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311; Spears Free Clinic and Hospital for Poor Children v. Cleere, 10 Cir., 197 F.2d 125; United States v. Oregon State Medical Society, D.C.Ore., 95 F.Supp. 103; United States v. Oregon State Med. Soc., 343 U.S. 326, 72 S.Ct. 690, 96 L. Ed. 978; Northern California M[onument] D[ealers] Ass'n v. Interment Ass'n, D.C.S.D.Cal., 120 F. Supp. 93; Kolb v. Pacific Maritime Association, D.C.N.D.Cal., 141 F. Supp. 264."

Although the defendants urge that the plaintiff, Elizabeth Hospital, is merely the alter ego of Dr. Frank Riggall, and that, therefore, this case is rendered res judicata by the former decision, it is not necessary to decide that question because it may be said with certainty that the Riggall case is stare decisis and controlling in the case at bar unless the mere fact that the plaintiff here is a hospital rather than an individual doctor is of crucial importance. The facts as alleged in this suit are identical in

almost every detail to those alleged in the Riggall case except with respect to those facts which relate peculiarly to the corporate hospital rather than to the individual plaintiff in the former suit. The primary difference in that respect is an allegation in the present case that the hospital purchases large quantities of various medical supplies from sources outside of the State of Arkansas. This latter allegation adds nothing to remove this case from the purview of the court's language in the Riggall case quoted above.

■ The court is likewise of the opinion that while the operation of hospitals, both public and private, has undoubtedly moved into a field of intense commercial activity, that such activity is nevertheless, whether it be that of a hospital or a private physician, purely local in character. Such is the holding in Spears Free Clinic and Hospital for Poor Children v. Cleere, 10 Cir., 1952, 197 F.2d 125, which was cited with approval by the Court of Appeals in Riggall v. Washington County Medical Society, supra, 249 F.2d at page 270. As the court said in the Spears case 197 F.2d at page 126:

> "The practice of the healing arts in Colorado, including chiropractic, is wholly local in character. The alleged conspiracy and the acts alleged to have been done in furtherance thereof had for their purpose and object the monopolization and restraint of purely local activities. No price fixing or price maintenance for professional or other services was involved. There was no intent to injure, obstruct or restrain interstate or foreign commerce. The mere fact that a fortuitous and incidental effect of such conspiracy and acts may be to reduce the number of persons who will come from other states and countries to the Spears Hospital for chiropractic treatments does not create such a relation between interstate and foreign commerce and such local activities as to make them a part of such commerce."

As the court concludes that the decision of the Court of Appeals for the Eighth Circuit is based upon facts essentially identical to the facts presented in this case, the decision of the Court of Appeals is stare decisis and binding upon this court until its decision is reversed, and for that reason it is unnecessary to review further the cases which impel a refusal of jurisdiction in these circumstances, although it may be said that no decision has been cited to the court which would cast doubt upon the decision in the Riggall case as decided by the Court of Appeals. The court, therefore, must find that it has no jurisdiction based upon any claim under the anti-trust acts, and that no cause of action is stated under those acts.

■■ Before reaching a consideration of whether the plaintiff states a claim for relief under the law of Arkansas, it is necessary to point out that Rule 17(b), F.R.Civ.P., provides that the capacity to sue or be sued is governed by state law unless a federal right is involved. An unincorporated association is not suable as an entity in Arkansas. This court said in McNutt v. United Gas, Coke & Chemical Workers, D.C. W.D.Ark.1952, 108 F.Supp. 871, at page 875:

> "An unincorporated association may not be sued in its common name in Arkansas. Baskins v. United Mine Workers, 150 Ark. 398, 234 S. W. 464; District No. 21, United Mine Workers of America v. Bourland, 169 Ark. 796, 277 S.W. 546. Such being the law of Arkansas, the instant suit is maintainable under Rule 17(b) only if a substantive federal right is involved."

See also Ketcher v. Sheet Metal Workers' International Ass'n, D.C.E.D.Ark.1953, 115 F.Supp. 802; Atex Mfg. Co. v. "Lloyd's of London", D.C.W.D.Ark.1955, 139 F.Supp. 314; Bunch v. Launius, 1953, 222 Ark. 760, 262 S.W.2d 461.

The court has concluded that no claim has been stated under the anti-trust acts, and therefore no federal substantive right exists here. Thus, the sole juris-

dictional question remaining is based upon diversity of citizenship and a claim under Arkansas law. For that reason, under Rule 17(b) the Washington County Medical Society is not a proper party in the claim based upon any state law, and the claim against the medical society must be dismissed on that ground.

With respect to the plaintiff's claim against the remaining defendants for relief under the common law, the Arkansas statutes provide that the common and statute law of England prior to the fourth year of James I "shall rule the decision in this State," and, of course, this applies to common law respecting monopolies and restraint of trade. Ark. Stat.Ann. Sec. 1–101 (1947). The common law, however, was not unlike the requirements of the federal and state anti-trust statutes, and the terms used at common law are given the same meaning when used in those acts. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619; United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663. Combinations in restraint of trade or tending to create or maintain a monopoly gave rise to actions at common law. Rogers v. Douglas Tobacco Board of Trade, 5 Cir., 1957, 244 F.2d 471. The actions which gave rise to a claim at common law were:

> " * * * any combination or agreement that in its operation has or may have a tendency to restrain trade, to stifle competition in trade, to create or maintain a monopoly, or unnaturally to control the production or supply of, or to increase the price of, or to curtail the opportunity to obtain useful commodities to the injury of the public * * *." 36 Am.Jur., Monopolies, Sec. 5.

Except that under the common law of a state no burden upon interstate commerce would be required, the common law gives no greater right of action than is given under the anti-trust acts. There is no allegation in the complaint that the alleged conspiracy of the defendants tended to effect a monopoly or stifle competition. The plaintiff does allege that the acts complained of restrain trade and commerce between Arkansas and other states and territories. The factual allegations of the complaint, however, as distinguished from this conclusion, clearly establish that if there was any restraint, it related solely to a lessening of the practice of Dr. Riggall and the business of the plaintiff hospital. The court does not feel that the operation of the hospital can be considered a "trade," notwithstanding the growing commercialization of medical services. However, even if the operation of the hospital is to be treated as a "trade," the words of the Court of Appeals in the Riggall case, supra, are nevertheless still applicable to the claim under the common law: " * * * plaintiff's complaint in substance is that the practice of his profession would have been more profitable to him had the defendants not deprived him of membership in the Washington County Medical Society." In other words, the alleged conspiracy of the defendants under the factual allegations of the complaint does not tend to establish a monopoly, stifle competition, or restrain trade, and even if the conclusion of the plaintiff that trade is restrained can be accepted, there are no factual allegations which would justify a further conclusion of public injury.

The Arkansas Constitution, Art. 2, Sec. 19, provides:
> "Perpetuities and monopolies are contrary to the genius of a republic, and shall not be allowed; nor shall any hereditory [sic] emoluments, privileges or honors ever be granted or conferred in this State."

From what has just been said it is apparent that this provision has no applicability to the facts stated in the complaint, since no allegations are made showing a tendency of the acts complained of to create a monopoly.

The Arkansas Statutes contain provisions forbidding any combination "to regulate or fix either in this State or elsewhere the price of any article of

manufacture, mechanism, merchandise, commodity, convenience, repair, any product of mining, or any article or thing whatsoever." Ark.Stat.Ann. Sec. 70–101 (1947). It is apparent that the facts alleged in the complaint do not show any attempt or intention to fix or regulate any prices for medical services. The statutes also forbid a monopoly and the creation of a monopoly by driving out competition. Ark.Stat.Ann., Secs. 70–105 and 70–106 (1947). Since no monopoly or attempt at monopoly is alleged or shown by the facts in the complaint, and since it is likewise apparent that the plaintiff is not being driven from competition, these statutes have no application.

 Although ample time was afforded the plaintiff for filing a brief, the plaintiff has cited no provisions of the Arkansas Statutes or Constitution, and no decisions of the Arkansas Supreme Court relative to the common-law right which it asserts, except to say that "a civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by an unlawful means." Southwestern Publishing Co. v. Ney, 227 Ark. 852, 302 S.W.2d 538, 542. This is unquestionably a proper statement of the law, but the plaintiff has cited no case indicating that the defendants, by denying Dr. Riggall membership in a private organization, have either concerted to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. The plaintiff argues that under several Arkansas Statutes organized medicine in Arkansas is given powers which might well be classified as governmental in nature. Ark.Stat.Ann. Secs. 72–602, 72–604, 72–605 (1957 Replacement). It may be that if the State of Arkansas controlled the operation of the Washington County Medical Society that the refusal of the society to admit Dr. Riggall to membership might in a proper case be "state action," and as such might be a discrimination proscribed by both the Fourteenth Amendment of the Federal Constitution and by Article 2, Sec. 3, of the Constitution of Arkansas, but this is not the claim asserted by the complaint, nor does it appear that such a claim could be supported on the facts alleged. The mere fact that the medical society is not merely a social or fraternal organization, but an active and effective instrumentality benefiting its members, does not necessarily require that organization to admit to membership any qualified person who seeks its undeniable benefits. The analogy of the medical society to a labor union drawn by plaintiff is no doubt apt, but the banding together of persons of common interest in a free society is so commonly done for almost every conceivable interest that such united action, in whatever sphere of human activity, can be classed as characteristic of, rather than repugnant to, a free society and free trade. No doubt every group of persons who does so band together to seek a common goal or oppose a common grievance is offensive to many other persons, and in many instances, group action either fortuitously or by design interferes to some extent with some economic, social, or political desire of many other persons. Whenever a labor union organizes, employers usually consider themselves injured, at least in some ways. By the same token employers band together in their various trade and business organizations, and usually the actions of such organizations are at best considered troublesome by unions. So it is in almost every realm of activity, but far from bespeaking an inherent opposition to the principle of free trade and enterprise, such action is more frequently than not a fundamental aspect of free enterprise, at least unless and until it goes beyond the permissible limits and violates some applicable law. The alleged economic activity of the medical associations, though it may have a profound effect upon other men of the profession as well as upon laymen, is no more contrary to any law or decision cited or found by the court than the same sort of activity of other groups. Nor does the court find

any law or decision requiring such groups to admit to membership any person who may be as well qualified as the present membership.

On the contrary, the decisions seem unanimously to agree that there is no "right" to become a member of a voluntary association, and they make no distinction grounded on the type of activity of that association. In Arnstein v. American Society of Composers, Authors and Publishers, D.C.S.D.N.Y.1939, 29 F. Supp. 388, the plaintiff, a composer, alleged a conspiracy on the part of the society to prevent his membership, even though he was well qualified for membership. The court said at page 393, of 29 F.Supp.:

"One of plaintiff's main contentions against ASCAP was that he had applied for membership, was fully qualified and that they unjustifiedly refused to admit him to membership. The following quotation from the plaintiff's brief fairly sets forth his claim in this respect: 'That although he has been a composer of music for the last forty years, and his music has been performed for profit in thousands of public places where the ASCAP is the sole collector of royalties, by barring plaintiff from membership the ASCAP was able to keep all the royalties so collected, without any responsibility to plaintiff. The argument that they have such right to exclude plaintiff is erroneous.'

\* \* \* \* \* \*

"[Defendants] say that he is not qualified as a composer; that he has not composed any works that have any value to ASCAP; that he does not own the performing rights in most of the works that he wrote and that they were justified in rejecting him from membership.

"It is not necessary for me to go into this, because I find that ASCAP is a private association; that its rules and bylaws define the manner and means upon which it admits composers to membership; that no one has an absolute right to be a member; that it has the sole power to say who shall belong and who shall not. That refusal to admit plaintiff to membership is not an invasion of his rights and gives him no right of action against ASCAP thereby."

See also, Annotation, 59 A.L.R.2d 1290.

The action of the medical society and its individual members, whatever their motive may have been, was not action to attain an unlawful purpose or to use unlawful means in attaining a lawful purpose, absent some specific statutory requirement that all persons be admitted to membership.

It is true that the plaintiff alleges that the refusal of the defendants to admit Dr. Riggall to membership has resulted in a number of other conditions unfavorable to the plaintiff hospital as well as to Dr. Riggall. It may be seriously doubted whether any of the numerous conditions alleged to have been caused by the denial of membership are proximate results of that action by the medical society. Compare Robinson v. Lull, D.C. Ill.1956, 145 F.Supp. 134, at page 137, where the court considered a series of facts similar to those presented here, and found no proximate connection between the acts of the defendants and the alleged injury.

Assuming, however, that the conditions and injuries allegedly resulting from the medical society's denial of membership to Dr. Riggall were all proximate results of that action of the medical society, there is nevertheless no showing of any violation of state law in that action or any conspiracy to violate any state law. Most of the injuries said to result to the plaintiff and to Dr. Riggall from his inability to obtain membership in the medical society relate to the alleged loss of patients of the hospital. These assertions are in essence specifications of the allegation that the defendants "imposed a professional boycott upon the plaintiff, and thereby prevented the plaintiff from receiving great numbers of patients from outside the State

of Arkansas and elsewhere." These allegations, however, fall short of establishing a claim under Arkansas law. In Meier v. Speer, 1910, 96 Ark. 618, 132 S.W. 988, 32 L.R.A.,N.S., 792, certain members of labor organizations agreed among themselves that they would not work for one Carbaugh because he was listed on what was termed the "unfair list." The action of the union members resulted in the refusal of one O'Neal to do certain work for Carbaugh. The court said at page 624, of 96 Ark. at page 991 of 132 S.W.:

> "The principles of law applicable to the above facts are few, simple, and well established,"

and quoting Martin's Modern Law of Labor Unions, Sec. 69, said:

> " 'Intimidation and coercion are essential elements of a boycott. It must appear that the means used are threatening and intended to overcome the will of others and compel them to do or refrain from doing that which they would or would not otherwise have done.' Citing many cases in note. While violence or the threats thereof frequently accompany a boycott, yet it is not essential that physical force, or the threat thereof, be present in order to constitute a boycott. But the things done or the words spoken must be 'intended and naturally tend to overcome the will of others,' and to induce them to do or not to do the things which those in the combination desire."

The court added, quoting from Carew v. Rutherford, 106 Mass. 1:

> " 'Every man has a right to determine what branch of business he will pursue, and to make his own contracts with whom he pleases and on the best terms he can. He may change from one occupation to another, and pursue as many different occupations as he pleases, and competition in business is lawful. He may refuse to deal with any man or class of men. And it is not a crime for any number of persons, with a lawful object in view, to associate themselves together and agree that they will not work for or deal with a certain man or classes of men, or work under a certain price, or with certain conditions.' "

The complaint does not allege any coercion on the part of the defendants in the pursuit of their alleged boycott of the plaintiff. Under the rule in the Meier case as just quoted, the acts complained of must tend, in some manner, to coerce others. Since no such coercion is alleged, the plaintiff fails to state a claim grounded upon either the Constitution, Statutes, or common law of Arkansas, and the complaint should be dismissed as to the remaining individual defendants.

Therefore an order is being entered today on the motions of all defendants dismissing the complaint.