ARKANSAS OKLAHOMA GAS CORPORATION *v.*
CITY of VAN BUREN, Arkansas

CA 03-541                                    148 S.W.3d 282

Court of Appeals of Arkansas
Division IV
Opinion delivered February 18, 2004

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, for appellant.

*Candice Settle-Beshears*, for appellee.

SAM BIRD, Judge. Arkansas Oklahoma Gas Corporation (AOG) filed suit on October 25, 1996, in the Crawford County Circuit Court seeking a declaration of its rights under its franchise agreement with the City of Van Buren.[1] AOG's amended complaint alleges that AOG pays the city a franchise fee of $49,500 per year; that the city has failed to protect the public's use of the public rights-of-way by allowing private commercial entities to use public rights-of-way for private purposes without the payment of a franchise

---

[1] This case is factually related to *Southwestern Glass Co. v. Arkansas Oklahoma Gas Corp.*, 325 Ark. 378, 925 S.W.2d 164 (1996), in which AOG filed suit seeking to enjoin Southwestern Glass Company from laying a gas pipeline to its plant because there was insufficient space for its safe installation, operation, and maintenance due to the pipeline's crossing under a public street and within close proximity of an already existing gas pipeline owned by AOG. The trial court issued an order on July 18, 1995, granting the injunction. The case was appealed, and on July 15, 1996, the supreme court reversed the trial court because AOG failed to show how Southwestern Glass's proposed pipeline would be inconsistent with the city's use of its right-of-way.

fee; and that the city could not, consistent with the state and federal constitutional due-process and equal-protection provisions, allow some private uses of the public rights-of-way without charge while charging other entities, such as AOG, a franchise fee to use the same public rights-of-way. The city answered, denying the material allegations of the complaint. The city also filed a counterclaim seeking a declaration that it could allow private entities to use the public rights-of-way as long as such uses were not inconsistent with the public's use. AOG denied that the city was entitled to the relief sought in its counterclaim.

After a bench trial, the court found in favor of the City of Van Buren that a private entity can contract with the city to use public easements and rights-of-way if that use is consistent with the public's use of the easements and rights-of-way. AOG raises two points on appeal: (1) that the trial court erred in not finding that the city violated its duty to protect the public interest by allowing private entities to use the public rights-of-way; and (2) that the city's allowance of private uses of the public rights-of-way without charge violated AOG's state and federal constitutional rights to due process and equal protection. We find no merit to the first of these points, and we do not reach the second point because it is not preserved for appeal. Therefore, we affirm.

Harry Short, the director of the Van Buren Municipal Utilities Commission, testified that there are several instances where private utility lines are located within the city's public rights-of-way. He stated that previously it was a common practice to allow private sewer lines that did not meet the city's sewer construction standards to be tied into the public sewer, but that this practice had changed in the last ten to fifteen years. Using a map, Short identified the location of four such private sewer easements, but stated that there were also other such private sewer lines whose locations were not catalogued. Short stated that the city was trying to discontinue the practice of permitting private sewer easements by requiring individuals, at their own expense, to extend their sewer lines using construction methods approved by the city, and to dedicate their lines to the public. He also stated that he did not know the depth of the private sewer lines whose location he identified on the map.

Additionally, Short explained that Allen Canning Company (Allen Canning) had obtained a discharge permit and constructed a private sewer line from its facility in Van Buren, utilizing both public rights-of-way and easements that the utilities commission

had previously obtained, to a point where it was permitted to discharge its waste. Short stated that Allen Canning's line crosses two city streets and utilizes a portion of Fourth Street, also known as Highway 59. He stated that the company obtained permission from the commission to use commission easements but was uncertain as to whether the company obtained permission from the city council to utilize the street rights-of-way.

Short stated that he was also familiar with the location of a gas pipeline constructed by Southwestern Glass Company (Southwestern) that crossed South 28th Street. He stated that Southwestern had placed a casing and a line between two city utility lines and that the matter had been brought to the attention of the city council. He said that the city council ultimately adopted an ordinance authorizing the location of Southwestern's line under South 28th Street, but he did not know the depth and placement of the line.

Short also stated that, during the summer of 1996, there was some discussion that the city was going to develop a policy that would deal with private-line locations within public rights-of-way, but that he was not aware of whether any policy was ever officially adopted.

Gerald Atkins, a licensed civil engineer, testified on behalf of AOG that he was involved in Allen Canning's installation of a private wastewater line from the company's plant in Van Buren to land that the company had purchased for irrigation and disposal of wastewater. He stated that the line ran along the Highway 59 right-of-way, crossed Scott Street, crossed the right-of-way of Third Street, and crossed private property to the location that the company had purchased. Atkins explained the purpose of the Arkansas One Call Program[2] and stated that, at one time, Allen Canning was a member of the program, but he did not know the current status of its membership. He stated that, if Third Street was being reconstructed and the engineer did not know about Allen Canning's private pipeline, and if Allen was not a member of Arkansas One-Call, there could be a potential conflict.

---

[2] Arkansas One Call is a system designed to track underground utility lines in an effort to prevent damage to the lines. If construction excavation extends to a depth of thirty inches or more, the excavator is required to call the One Call Center so that the Center can notify the utilities in the area about the planned excavation, and the utilities are required to mark the location of their lines. See Ark. Code Ann. §§ 14-271-101 through 14-271-115 (Repl. 1998).

Van Buren Mayor John Riggs recounted being approached by Southwestern and Waelder Oil & Gas concerning the construction of Southwestern's private line in a city right-of-way on South 28th Street. He stated that Southwestern informed him that it could save a lot of money by going through a private gas well, that it was displeased with AOG, and that it believed that it was paying too much for natural gas. He said that Southwestern and Waelder had negotiated a contract and purchased private rights-of-way, and that the only public right-of-way that they needed was under South 28th Street. Riggs further stated that, without first consulting anyone else in city government, he gave Southwestern permission to bore under South 28th Street. He recounted a discussion with Michael Carter, president of AOG, during which Carter revealed that he thought that the mayor had made the wrong decision, while Riggs pointed out the savings that Southwestern would enjoy by direct purchase.

Riggs stated that Carter informed him that industrial rates kept the residential rates down. Riggs also stated that the matter was first discussed with the city council after Southwestern installed the private line and AOG brought up the controversy over its being located too close to city utility lines. Riggs testified that the discussion at the city council meeting was that, as long as Southwestern was in compliance with safety regulations, the location of the line would be acceptable. He stated that the council supported his decision about crossing South 28th Street but never actually passed a resolution authorizing Southwestern to use the public right-of-way.

Riggs testified that the planning commission had not developed any rules for the city concerning private utility lines within public rights-of-way. He gave the following reasons for permitting Southwestern to install its private pipeline: it would save money for Southwestern, AOG did not have an exclusive franchise, Waelder had verified that it was not becoming a public utility by running gas to a single purchaser, and the installation would comply with all safety regulations. He also indicated that Southwestern had discussed the possibility of expanding its Van Buren plant by bringing work from its Fort Smith plant. He also stated that while he understood that the city council was charged with the responsibility of dealing with the city rights-of-way, he believed that this was a circumstance where, as mayor, he had the authority to make a decision independent of a formal vote from the city council. Riggs admitted that, although the city had not yet

charged a franchise fee to Southwestern, it was planning to charge a fee of $10 per month. He stated that AOG received the benefits of using the public right-of-way from their franchise agreement. He also testified that, if a private company were in compliance with all safety regulations, he would not consider the effect of the private installation on the franchise utilities. Riggs stated that he believed that entities using the public rights-of-way should be required to pay for that use.

Patrick Mickle, a civil engineer, testified that he was familiar with the right-of-way known as South 28th Circle, a part of the Van Buren Industrial Park Subdivision. He also stated that, if the industrial park should be expanded, there would need to be additional rights-of-way that would extend above the private gas line. He stated that this could pose a problem because, in reconstructing or expanding a street, excavation would need to be at a depth of approximately three feet. He stated that it was likely that the private gas line would have to be relocated and a large drainage ditch installed at a depth of four to five feet below the surface.

Michael Carter, president of AOG, testified that AOG has operated under a nonexclusive franchise in Van Buren since at least 1979 and, at the end of 2001, AOG had 5,800 customers within the corporate limits of Van Buren. He also stated that AOG served a number of industrial customers, primarily in the industrial park area. The franchise imposes on AOG the obligation to serve all residential customers, even if a particular customer may not be economical to serve. He stated that AOG is regulated by the public service commission in the amount of revenue that it is entitled to receive for services and that revenue is allocated to different-sized customers. Carter testified that the franchise gives AOG the right to use public streets for the location of gas pipelines, an important feature, because in the city limits a pipeline cannot travel very far without running alongside or having to cross a street.

He stated that the revenue impact on AOG of not having Southwestern as a gas customer would have been approximately $170,000 to AOG. He stated that, if AOG lost Southwestern as a customer, it would have to make up a significant revenue loss from other AOG customers within the city. He stated that the public service commission sets AOG's rates and any such loss would be allocated to other customers. He admitted that, because Southwestern has remained a customer of AOG, AOG has not suffered a loss of revenue as a result of the city's allowing Southwestern's private use of a public right-of-way. He stated that safety was the

reason for the litigation. He also stated that AOG could not understand why it had to pay a franchise fee of $49,500 per year if a private entity could come in and place private lines in public rights-of-way and "pick off" AOG's best customers.

The trial court entered a decree on December 13, 2002. However, in response to AOG's motion for findings of fact and motion for a new trial, an amended decree was entered on December 30, 2002. In its amended decree the court found that, because AOG had a nonexclusive franchise with the city, the city did not owe a duty to AOG beyond those contained in the franchise agreement. The trial court also found that the action of the city in allowing Southwestern to build a pipeline was within the realm of discretion of the city and not so unreasonable or dangerous as to warrant judicial intervention. Finally, the trial court found that a private entity can contract with the city to use the city's easements and rights-of-way so long as the city does not change the dedicated "use" of the rights-of-way, and that AOG offered no proof that Southwestern's placement of its pipeline under 28th Street changed the use of the right-of-way. This appeal followed.

■■ The standard of review of a circuit court's findings of fact after a bench trial is whether those findings are clearly erroneous. Ark. R. Civ. P. 52; *Burke v. Elmore,* 341 Ark. 129, 14 S.W.3d 872 (2000). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *McQuillan v. Mercedes-Benz Credit Corp.,* 331 Ark. 242, 961 S.W.2d 729 (1998). Disputed facts and determination of the credibility of witnesses are within the province of the judge, sitting as the trier of fact. *Ford Motor Credit Co. v. Ellison,* 334 Ark. 357, 974 S.W.2d 464 (1998).

AOG first argues that the city does not have the power to divert its rights-of-ways and easements to private use and that, by doing so, the city has failed to protect the public's use of the rights-of-way. In making this argument AOG relies on cases such as *Campbell v. Ford,* 244 Ark. 1141, 428 S.W.2d 262 (1968), where the supreme court held that landowners abutting a platted but unopened street suffered special damages different from the general public where the street was blocked by other abutting landowners with the acquiescence of the city, and that plaintiffs were entitled to bring an action to compel the removal of the obstruc-

tions. AOG also cites other cases, such as *Langford v. Griffin*, 179 Ark. 574, 17 S.W.2d 296 (1929); *City of Osceola v. Haynie*, 147 Ark. 290, 227 S.W. 407 (1921); *City of Helena v. Wooten*, 98 Ark. 156, 135 S.W. 828 (1911), in support of this proposition.

The trial court distinguished *Campbell v. Ford* and the other cases and, instead, relied upon *Padgett v. Arkansas Power & Light Co.*, 226 Ark. 409, 290 S.W.2d 426 (1956). The trial court's basis for this distinction was that the uses in *Campbell*, *Langford*, and *Osceola* changed the essential nature of the public way. In *Padgett*, the court stated:

> Streets within the limits of municipal corporations are subject to many uses by the public to which highways in the country are not subject. Moreover, as a village grows into a town and the town grows into a city, the rights of the public in its streets are correspondingly broadened. As a rule, country highways are needed only for purpose of passing and repassing, and, subject to some exceptions, the rights of the public and of the authorities in charge are confined to the use of the surface, with such rights incidental thereto as are essential to such use. Streets, however, may be used for many purposes other than travel, such as construction of sewers and drains, the laying of gas and water pipes, the erection of telegraph, telephone and electrical power lines, and a variety of other improvements, beneath, upon, and above the surface, to which in modern times they have been subjected.

*Id.* at 413, 290 S.W.2d at 429.

In its reply brief, AOG argues that *Padget* should be limited to *public* utilities, noting that Southwestern's pipeline is not a public-utility pipeline. We believe that the *Campbell* line of cases and *Padgett* are consistent in that they both allow other private uses of public rights-of-way as long as the private use is not inconsistent with the public's use. In *Campbell*, *Langford*, and *Osceola*, blocking the street was not consistent with the public's use of the street and was properly enjoined.

The trial court found that AOG presented no evidence that the city has failed to protect the public or that AOG suffered any special damage apart from the general public. As noted in Footnote 1 above, the supreme court has already held that AOG failed to prove that Southwestern's pipeline was inconsistent with the public's use of the rights-of-way. The court recognized the

broad discretion given to city officials in matters pertaining to the use of the streets and sidewalks of a city. *See City of Marianna v. Gray*, 220 Ark. 468, 248 S.W.2d 379 (1952). We do not find that the trial court's decision was clearly erroneous. *See also City of Little Rock v. Linn*, 245 Ark. 260, 432 S.W.2d 455 (1968).

For its second point, AOG argues that, by permitting the use of public rights-of-way by private entities without charge while charging AOG a franchise fee for such usage, the city has violated AOG's constitutional rights. AOG argues that its due-process rights were violated when the city permitted the private use of its public rights-of-way without affording AOG notice and an opportunity to be heard prior to allowing others to use the public rights-of-way. AOG also contends that the city's action violated its right to equal protection because AOG pays an annual franchise fee of $49,500 to the city while Southwestern is supposed to pay a franchise fee of only $10 per month.

These constitutional arguments were not addressed by the trial court in its initial decree entered on December 30, 2002. Although AOG filed a motion on January 13, 2003, requesting the trial court to address certain issues that it had not addressed in its initial decree, AOG's motion did not request that the court address these constitutional issues; and the court did not address those issues in its amended decree entered February 11, 2003, from which this appeal is taken. It is well settled that the failure to obtain a ruling from the trial court is a procedural bar to our consideration of the issue on appeal. *Barker v. Clark*, 343 Ark. 8, 33 S.W.3d 476 (2000). It is incumbent upon the appealing party to obtain a ruling on an issue to preserve it for review. *Ross Explorations, Inc. v. Freedom Energy, Inc.*, 340 Ark. 74, 8 S.W.3d 511 (2000). Accordingly, we do not reach the merits of AOG's second point.

Affirmed.

GRIFFEN and CRABTREE, JJ., agree.