**SPEARS FREE CLINIC AND HOSPITAL
FOR POOR CHILDREN v.
CLEERE et al.**

No. 4388.

United States Court of Appeals
Tenth Circuit.

May 10, 1952.

George Louis Creamer, Denver, Colo.
(Charles Ginsberg, Denver, Colo., on the
brief), for appellant.

126

Kenneth W. Robinson, Denver, Colo. (James T. Burke, Duke W. Dunbar, H. Lawrence Hinkley, James D. Parriott, Jr., J. P. Nordlund and Robert D. Charlton, all of Denver, Colo., on the briefs), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Spears Free Clinic and Hospital for Poor Children,[1] a corporation, brought this action to recover damages under 15 U.S.C.A. § 15 for violation of 15 U.S.C.A. §§ 1 and 2. On motion of the Spears Hospital the court dismissed the action as to certain defendants. The remaining defendants[2] are the Medical Society of the City and County of Denver, a Colorado corporation, former and present members of the State Board of Health of the State of Colorado, and former and present officials or trustees of the Medical Society. One of the defendants is a licensed dentist, one is a registered pharmacist, and two are attorneys duly licensed to practice law in the State of Colorado. The other defendants are doctors of medicine, duly licensed to practice in the State of Colorado, and are members of the Medical Society. The defendants interposed a motion to dismiss the action on the ground that it did not state a claim on which relief could be granted. The trial court sustained the motion and dismissed the action. Spears Hospital has appealed.

The complaint alleges that the Spears Hospital operates as a chiropractic institution and has on its staff licensed chiropractors, laboratory technicians, X-ray technicians, physiotherapists, nurses and dieticians; that it provides facilities wherein persons are given and furnished, by duly licensed persons, chiropractic treatments, that are permitted by the laws of Colorado; and that "numerous persons from all of the United States, and from many foreign countries" regularly come to the institution for treatment. It further alleges that the defendants combined and conspired to prevent the licensing of such institution by the proper authorities of the State of Colorado, to prevent the operation and maintenance of such institution, and to allocate to the members of the medical profession within the State of Colorado the entire practice of the healing arts within that state, to the exclusion and restraint of the practice of chiropractic; and that the defendants did certain acts to prevent the maintenance of the Spears Hospital as a chiropractic institution and to monopolize the entire practice of the healing arts within the State of Colorado in the medical profession, to the exclusion and restraint of the practice of chiropractic.

The practice of the healing arts in Colorado, including chiropractic, is wholly local in character. The alleged conspiracy and the acts alleged to have been done in furtherance thereof had for their purpose and object the monopolization and restraint of purely local activities. No price fixing or price maintenance for professional or other services was involved. There was no intent to injure, obstruct or restrain interstate or foreign commerce. The mere fact that a fortuitous and incidental effect of such conspiracy and acts may be to reduce the number of persons who will come from other states and countries to the Spears Hospital for chiropractic treatments does not create such a relation between interstate and foreign commerce and such local activities as to make them a part of such commerce.[3]

To come within the purview of the Sherman Act the restraint of commerce or the obstruction of commerce must be direct and substantial and not merely incidental or remote.[4] The conspiracy or combination

1. Hereinafter referred to as Spears Hospital.

2. Hereinafter referred to collectively as the defendants.

3. United States v. Yellow Cab Co., 332 U.S. 218, 230–232, 67 S.Ct. 1560, 91 L.Ed. 2010.

4. Apex Hosiery Co. v. Leader, 310 U.S. 469, 510, 60 S.Ct. 982, 84 L.Ed. 1311; Hopkins v. United States, 171 U.S. 578, 592, 19 S.Ct. 40, 43 L.Ed. 290; Levering & G. Co. v. Morrin, 289 U.S. 103, 107–108, 53 S.Ct. 549, 77 L.Ed. 1062; Industrial Association of San Francisco v. United States, 268 U.S. 64, 80–82, 45 S.Ct. 403, 69 L.Ed. 849.

must be aimed or directed at the kind of restraint which the Act prohibits, or such restraint must be the natural and probable consequence of the conspiracy.[5]

■ A specific intent to restrain trade or create a monopoly need not always be shown. It is sufficient that a restraint or monopoly, within the purview of the Act, results as a consequence of the defendants' conduct. The defendants "must be held to have intended the necessary and direct consequences of their acts, and cannot be heard to say the contrary."[6]

■ Where, however, the object and purpose is to restrain or monopolize activities or matters purely local in character, those facts may be considered in determining whether the effect on interstate or foreign commerce is direct and substantial or only incidental, indirect and remote.[7] In Levering & G. Co. v. Morrin, 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062, the complainants were engaged in fabricating and erecting structural iron and steel and attempts were made by unions in the City of New York to compel them to employ only union labor in this work. The complaint alleged that all the steel used by the complainants in the City of New York was transported from other states, and that the success of the respondents' efforts would result in the destruction of the complainants' interstate traffic in steel. The court said, 289 U.S. at page 107, 53 S.Ct. at page 551, 77 L.Ed. 1062:

"All this, however, is no more than to say that respondents' interference with the erection of the steel in New York will have the effect of interfering with the bringing of the steel from other states. Accepting the allegations

of the bill at their full value, it results that the sole aim of the conspiracy was to halt or suppress local building operations as a means of compelling the employment of union labor, not for the purpose of affecting the sale or transit of materials in interstate commerce. Use of the materials was purely a local matter, and the suppression thereof the result of * * * a purely local aim. Restraint of interstate commerce was not an object of the conspiracy. Prevention of the local use was in no sense a means adopted to effect such a restraint. It is this exclusively local aim, and not the fortuitous and incidental effect upon interstate commerce, which gives character to the conspiracy. * * * If thereby the shipment of steel in interstate commerce was curtailed, that result was incidental, indirect, and remote, and, therefore, not within the anti-trust acts * * *."[8]

■ A curtailment of the manufacture of articles to be shipped in interstate commerce or the lessening of the number of persons who travel in interstate commerce, resulting from a conspiracy to restrain or monopolize a wholly local activity, is ordinarily an incidental, indirect and remote obstruction to such commerce. In United Leather Workers International Union v. Herkert & Meisel Trunk Co., 265 U.S. 457, at page 471, 44 S.Ct. 623, at page 627, 68 L.Ed. 1104, the court said:

"This review of the cases makes it clear that the mere reduction in the supply of an article to be shipped in interstate commerce by the illegal or tortious prevention of its manufacture

5. Apex Hosiery Co. v. Leader, 310 U.S. 469, 511, 60 S.Ct. 982, 84 L.Ed. 1311; Fedderson Motors v. Ward, 10 Cir., 180 F.2d 519, 522.

6. United States v. Masonite Corp., 316 U.S. 265, 275, 62 S.Ct. 1070, 1076, 86 L.Ed. 1461; United States v. Griffith, 334 U.S. 100, 105, 68 S.Ct. 941, 92 L.Ed. 1236; United States v. Columbia Steel Co., 334 U.S. 495, 525, 68 S.Ct. 1107, 92 L.Ed. 1533.

7. Levering & G. Co. v. Morrin, 289 U.S.

103, 107–108, 53 S.Ct. 549, 77 L.Ed. 1062; United Leather Workers v. Herkert, 265 U.S. 457, 471, 44 S.Ct. 623, 68 L.Ed. 1104; Industrial Ass'n v. United States, 268 U.S. 64, 80–81, 45 S.Ct. 403, 69 L.Ed. 849; Atlantic Co. v. Citizens Ice & Cold Storage Co., 5 Cir., 178 F.2d 453, 457; Apex Hosiery Co. v. Leader, 310 U.S. 469, 506–513, 60 S.Ct. 982, 84 L.Ed. 1311.

8. Compare United States v. Frankfort Distilleries, 324 U.S. 293, 298, 65 S.Ct. 661, 89 L.Ed. 951.

is ordinarily an indirect and remote obstruction to that commerce. It is only when the intent or the necessary effect upon such commerce in the article is to enable those preventing the manufacture to monopolize its supply, or control its price, or discriminate as between its would-be purchasers, that the unlawful interference with its manufacture can be said directly to burden interstate commerce."[9]

 Here, the purpose and object of the conspiracy and of the means adopted to effectuate it, were to restrain the practice of chiropractic and to allocate to the medical profession the practice of the healing arts in Colorado. It is this exclusively local aim and not the fortuitous and incidental effect upon interstate and foreign commerce which gives character to the conspiracy. The effect upon interstate and foreign commerce was fortuitous and remote and not direct and substantial.

In Feddersen Motors v. Ward, 10 Cir., 180 F.2d 519, 522, the facts with respect to the purpose and object of the conspiracy were much like the facts in the instant case. There, the defendant, Fred Ward, Inc., was the distributor for Hudson automobiles in the Denver, Colorado, District and the plaintiff, Feddersen Motors, was a local dealer in Hudson automobiles at Greeley, Colorado, in such District. The other defendant, Fred Ward, through stock ownership controlled the management, purposes, policies and business practices of Fred Ward, Inc. In its complaint plaintiff alleged that the defendants entered into a conspiracy to force it out of business as a dealer in Hudson automobiles; it further alleged certain acts done in furtherance of the object of such conspiracy, and that the effect of such acts was to prevent or substantially lessen competition with other Hudson dealers or create a monopoly in the distribution of new Hudson automobiles in commerce, in such District. We there held that "only those contracts or combinations are within its (the Sherman

Act) scope which by reason of intent, tendency, or the inherent nature of the contemplated acts prejudice the public interests by unduly restricting or unduly obstructing the course of interstate commerce"; and that the complaint must allege facts "from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." We concluded that the alleged conspiracy and the acts done in furtherance thereof would not substantially obstruct or restrain interstate commerce with harmful effect to the public interest.

We conclude that in the instant case there was no direct, immediate or substantial effect on interstate or foreign commerce, bringing the alleged conspiracy within the scope of the Sherman Act.

We deem it unnecessary to pass upon the question whether the practice of the healing arts, including chiropractic, is trade or commerce within the meaning of § 1 of the Sherman Act.[10]

Affirmed.

---

9. See also Levering & G. Co. v. Morrin, 289 U.S. 103, 106, 107, 53 S.Ct. 549, 77 L.Ed. 1062; Apex Hosiery Co. v. Leader, 310 U.S. 469, 510–512, 60 S.Ct. 982, 84 L.Ed. 1311.

10. See United States v. Oregon State Medical Society, 72 S.Ct. 690.