249 F.2d 266
 Frank RIGGALL, Appellant,
v.
WASHINGTON COUNTY MEDICAL SOCIETY; Stanley Applegate, Individually and as President of Washington County Medical Society; Fount Richardson; Friedman Sisco; Ruth Ellis Lesh; and Alfred Hathcock, Appellees.
 No. 15804.
 United States Court of Appeals Eighth Circuit.
 November 15, 1957.
 
 James R. Hale, Fayetteville, Ark., for appellant.
 Eugene R. Warren, Little Rock, Ark. (Rex W. Perkins, Fayetteville, Ark., and Bailey, Warren & Bullion, Little Rock, Ark., on the brief), for appellees.
 Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.
 GARDNER, Chief Judge.
 
 
 1
 Appellant, a duly licensed physician and surgeon, brought this action against the defendants to recover treble damages for alleged violations of the Sherman Anti-Trust Act, Title 15, U.S.C.A. §§ 1, 2, 12 and 15. We shall refer to the parties as they were designated in the trial court.
 
 
 2
 Plaintiff was duly licensed as a physician and surgeon by the licensing authorities of the State of Arkansas in 1935 and at and since said time has been practicing his profession in Washington County, Arkansas. The defendant Washington County Medical Society is an unincorporated professional, economic organization and institution with at least thirty-six dues-paying or active members, and the other named defendants are members of the Washington County Medical Society and are also physicians and surgeons. Plaintiff in his complaint alleged that he was a citizen of Arkansas and that the defendants were also citizens of the State of Arkansas; that jurisdiction of the court was dependent upon provisions of the Sherman Anti-Trust Act, Title 15, U.S.C.A. §§ 1, 2, 12 and 15; that he had received various degrees from educational institutions and had thorough training and wide experience in the field of medicine and its practice; that while he was located at Prairie Grove, Arkansas, where he had practiced his profession since 1935, he received, accepted, treated and administered to patients from Arkansas, Oklahoma, Kansas, Missouri, Texas and other states and that had he been a member of the Washington County Medical Society he would in the past have received, accepted, treated and administered to a great many more patients and would in the future receive, accept, treat and administer to a great many more patients than in the past, not only from Arkansas but from many other states; that he was qualified for membership in the society but that notwithstanding such qualifications he had applied for membership in due form on four different occasions; that his applications had been wrongfully, unlawfully, capriciously and arbitrarily rejected, no reason for such rejections being given therefor; that he had exhausted his administrative remedies by appeal to the Arkansas Medicial Society and the American Medical Association but was unable to secure any redress and would in the future be unable to secure any remedy for the injuries suffered by reason of the arbitrary rejection of his applications for membership in the Washington County Medical Society, that the Constitution and By-Laws of the Washington County Medical Society provided that "Every legally registered physician residing and practicing in Washington County who is of good moral and professional standing and who does not support or practice, or claim to practice, any exclusive system of medicine, shall be eligible for membership," and "The Society shall judge of the qualifications of its members, but as it is the only door to the state medical society and the American Medical Association, for physicians within its jurisdiction, every reputable and legally qualified physician of Washington County who does not support, or practice or claim to practice sectarian medicine, or who does not claim to have exclusive or special medicines not available to the general profession, and who adheres carefully to the principles of medical ethics, shall be eligible to membership," and "This Society shall have general direction of the affairs of the medical profession of the county, and its influence shall be constantly exerted to better the scientific, material and social condition of every physician within its jurisdiction. Systematic efforts shall be made by each member, and by the Society as a whole, to increase the membership until it embraces every reputable physician in the county;" that the Washington County Medical Society was a component member of the Arkansas Medical Society and held a charter from that society, that the Arkansas Medical Society was a constituent member of the American Medical Association; that the American Medical Association is the only medical association or society of national prominence, influence or importance in the United States and that membership in the American Medical Association is of great economic importance and benefit; that because of his denial of membership in the Washington County Medical Society he had been and was prevented from doing a number of enumerated things all of which would be of great economic benefit and importance to him as well as to his patients and the public and society in general, all of which substantially affected trade and commerce between the State of Arkansas and other states, territories and foreign countries, and that the defendants had combined, confederated, and conspired among themselves and with other persons in disregard of the provisions of the constitution and by-laws of the Washington County Medical Society not to admit plaintiff to membership in said society and that defendants had stated publicly that they were not required to give plaintiff any reason for refusing or denying him membership. In his prayer he asked for $100,000 damages, that this amount be trebled pursuant to provisions of the Sherman Anti-Trust Act, that the defendants be enjoined and restrained from collusive or concerted action in respect to his application for membership, and that mandatory injunction issue commanding the defendant Washington County Medical Society to admit him to full membership. Other specific relief was also demanded.
 
 
 3
 Defendants filed answer denying that the court had jurisdiction of the cause of action or that the Sherman Anti-Trust Act was applicable to the allegations of plaintiff's complaint.
 
 
 4
 On hearing the court determined that it was without jurisdiction and entered judgment dismissing the complaint.
 
 
 5
 On this appeal it is urged that the court erred in holding that it was without jurisdiction and that is the sole issue.
 
 
 6
 Sections 1 and 2 of the Sherman Anti-Trust Act, so far as here pertinent, read as follows:
 
 
 7
 "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *" Sec. 1, Title 15 U.S.C.A.
 
 
 8
 "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding $5,000, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court." Sec. 2, Title 15 U.S.C.A.
 
 
 9
 Section 3 of the Sherman Anti-Trust Act is confined in its operation to territories or the District of Columbia and has no bearing on the issues here presented.
 
 
 10
 We must accept as true all well-pleaded facts in the complaint, but not conclusions. Section 1 of the Sherman Act was enacted by Congress pursuant to the commerce clause of the Constitution, art. 1, § 8, cl. 3, vesting in Congress the power to regulate interstate commerce. It is to be noted that the complaint is confined to plaintiff's private medical practice. It charges no economic burden on the public by reason of the alleged acts of the defendants. There is no charge that the rejection of plaintiff's application for membership in the Washington County Medical Society resulted in the raising or fixing of fees charged the public by other physicians. There is no allegation in the complaint remotely suggesting that the acts of defendants cast any burden upon interstate commerce. The mere fact that plaintiff at his location in Arkansas may be treating patients from other states who must travel interstate does not result in practicing his profession in interstate commerce as the transportation of such patients is incidental. The practice of his profession as disclosed by the allegations of his complaint is neither trade nor commerce within Section 1 of the Sherman Anti-Trust Act, nor are there any allegations in the complaint indicating that the actions of defendants here complained of resulted in a monopoly within the provisions of Section 2 of the Act. Plaintiff has not been prevented from practicing his profession, but in the final analysis his complaint is that he could practice it more profitably but for the acts of the defendants. The Sherman Anti-Trust Act was not primarily to protect the individual but to protect the general public economically, and a private party may not recover under the act unless there has been an injury to the general public economically. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311; Spears Free Clinic and Hospital for Poor Children v. Cleere, 10 Cir., 197 F.2d 125; United States v. Oregon State Medical Society, D.C.Ore., 95 F.Supp. 103; United States v. Oregon State Med. Soc., 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978; Northern California M. D. Ass'n v. Interment Ass'n, D.C.S.D. Cal., 120 F.Supp. 93; Kolb v. Pacific Maritime Association, D.C.N.D.Cal., 141 F.Supp. 264. In Apex Hosiery Co. v. Leader, supra, the Supreme Court has pointed out the scope and purpose of the Sherman Anti-Trust Act. In the course of the opinion in that case the court in referring to the purpose of the enactment of the Sherman Anti-Trust Act said [310 U.S. 469, 60 S.Ct. 992]:
 
 
 11
 "It was enacted in the era of `trusts' and of `combinations' of businesses and of capital organized and directed to control of the market by suppression of competition in the marketing of goods and services, the monopolistic tendency of which had become a matter of public concern. The end sought was the prevention of restraints to free competition in business and commercial transactions which tended to restrict production, raise prices or otherwise control the market to the detriment of purchasers or consumers of goods and services, all of which had come to be regarded as a special form of public injury."
 
 Again, it is said:
 
 12
 "In the cases considered by this Court since the Standard Oil case in 1911 [Standard Oil Co. of New Jersey v. U. S., 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619] some form of restraint of commercial competition has been the sine qua non to the condemnation of contracts, combinations or conspiracies under the Sherman Act, and in general restraints upon competition have been condemned only when their purpose or effect was to raise or fix the market price. It is in this sense that it is said that the restraints, actual or intended, prohibited by the Sherman Act are only those which are so substantial as to affect market prices. Restraints on competition or on the course of trade in the merchandising of articles moving in interstate commerce is not enough, unless the restraint is shown to have or is intended to have an effect upon prices in the market or otherwise to deprive purchasers or consumers of the advantages which they derive from free competition."
 
 
 13
 In United States v. Oregon State Medical Society, supra, the United States brought suit against the Oregon State Medical Society and others to restrain alleged violation by defendants of the Sherman Anti-Trust Act. The court in holding that the defendants were not guilty of any of the charges against them, among other things, said [95 F. Supp. 118]:
 
 
 14
 "The practice of medicine as conducted within the State of Oregon by doctors of Oregon, including defendants, is not trade or commerce within the meaning of Section 1 of the Sherman Anti-Trust Law, 15 U.S.C.A. § 1, nor is it commerce within the meaning of the constitutional grant of power to Congress `To regulate Commerce * * * among the several States'."
 
 
 15
 On direct appeal to the Supreme Court this decision was affirmed and the Supreme Court in the course of its decision, in referring to the finding that the practice of medicine was not trade or commerce within the meaning of Section 1 of the Sherman Act, said [343 U.S. 326, 72 S.Ct. 698]:
 
 
 16
 "If that finding in both aspects is not to be overturned as clearly erroneous, it, of course, disposes of this charge * * *."
 
 
 17
 The decision of the Supreme Court is of significance in another aspect. Plaintiff here relies quite strongly on American Medical Association v. United States, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434. The decision of the Supreme Court in United States v. Oregon State Medical Society, supra, points out that that decision is clearly distinguishable because it arose under Section 3 of the Sherman Act. Referring to this question the court said:
 
 
 18
 "American Medical Ass'n v. United States, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. 434, does not stand for the proposition that furnishing of prepaid medical care on a local plane is interstate commerce. That was a prosecution under § 3 of the Sherman Act of a conspiracy to restrain trade or commerce in the District of Columbia. Interstate commerce was not necessary to the operation of the statute there."
 
 
 19
 In Spears Free Clinic and Hospital for Poor Children v. Cleere, supra [197 F.2d 126], action was brought against the Medical Society of Denver City and County, former and present members of the State Board of Health and former and present officials and trustees of the Medical Society based on alleged violations of Sections 1 and 2 of the Sherman Anti-Trust Act. There it was alleged that "numerous persons from all of the United States, and from many foreign countries" regularly came to the plaintiff institution for treatment. The complaint further alleged that the defendants combined and conspired to prevent the licensing of the institution and to prevent the operation and maintenance of the institution and to further allocate to various members of the medical profession within the State the entire practice of the healing arts to the exclusion and restraint of the practice of chiropractic. There were further allegations that the defendants did certain acts to prevent the maintenance of the hospital as a chiropractic institution and to monopolize the entire practice of the healing arts within the State of Colorado in the medical profession. Referring to these charges the court among other things said:
 
 
 20
 "The practice of the healing arts in Colorado, including chiropractic, is wholly local in character. The alleged conspiracy and the acts alleged to have been done in furtherance thereof had for their purpose and object the monopolization and restraint of purely local activities. No price fixing or price maintenance for professional or other services was involved. There was no intent to injure, obstruct or restrain interstate or foreign commerce. The mere fact that a fortuitous and incidental effect of such conspiracy and acts may be to reduce the number of persons who will come from other states and countries to the Spears Hospital for chiropractic treatments does not create such a relation between interstate and foreign commerce and such local activities as to make them a part of such commerce.
 
 
 21
 "To come within the purview of the Sherman Act the restraint of commerce or the obstruction of commerce must be direct and substantial and not merely incidental or remote."
 
 
 22
 As has been observed, plaintiff's complaint in substance is that the practice of his profession would have been more profitable to him had the defendants not deprived him of membership in the Washington County Medical Society. Plaintiff was not prevented from practicing his profession and the complaint, we think, is wholly lacking in allegations essential to a cause of action under the Sherman Anti-Trust Act.
 
 
 23
 The judgment appealed from is therefore affirmed.