269 F.2d 167
 ELIZABETH HOSPITAL, INC., Appellant,
v.
Fount RICHARDSON; Friedman Sisco; Ruth Ellis Lesh; Stanley Applegate, Individually and As President of Washington County Medical Society; and Washington County Medical Society, Appellees.
 No. 16187.
 United States Court of Appeals Eighth Circuit.
 July 10, 1959.
 
 James R. Hale, Fayetteville, Ark., for appellant.
 Eugene R. Warren, Little Rock, Ark. (Warren & Bullion, Little Rock, Ark., were on the brief), for appellees.
 Before SANBORN, VOGEL and VAN OOSTERHOUT, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 Elizabeth Hospital, Inc., plaintiff, (appellant here) is a Delaware corporation authorized to do business in Arkansas, where it maintains and operates a hospital at Prarie Grove, Washington County. Its stockholders are Frank Riggall, Eva E. Riggall, Cecil Riggall and Robert Douglas Manning, each of whom owns 25% of the capital stock. The defendants are Fount Richardson; Friedman Sisco; Ruth Ellis Lesh; Stanley Applegate, individually and as president of Washington County Medical Society; Washington County Medical Society; and American Medical Association. The individual defendants are all physicians and surgeons and all defendants excepting the American Medical Association are citizens and residents of the State of Arkansas. The Washington County Medical Society is an unincorporated organization with at least 36 dues-paying or active members. The defendant Stanley Applegate is a member and president of such society and the other individual defendants are members thereof. A motion for dismissal as to the American Medical Association, a corporation organized under the laws of the State of Illinois, was granted by this court and it is accordingly not involved herein. For convenience, the parties will be designated as they were in the court below.
 
 
 2
 Plaintiff brought this action to recover treble damages in the total amount of $300,000.00 for alleged violations of the Sherman Anti-Trust Act, 15 U.S.C.A., §§ 1, 2, 12 and 15, and to obtain an injunction requiring the Society and Association to admit Dr. Frank Riggall to membership therein. Plaintiff also alleged a violation of the constitution, statutes and common law of Arkansas, attempting thereby to create two grounds for federal court jurisdiction: First, under the Sherman Act; and, second, because of diversity of citizenship and amount involved.
 
 
 3
 In brief summary, plaintiff's complaint alleged that it was authorized to and did engage in the operation and maintenance of a hospital of which Dr. Frank Riggall was Chief of Staff; that it purchased medical equipment and supplies, etc., for its use in operating its hospital from outside the State of Arkansas. It alleged a conspiracy on the part of the defendants which interfered with the referral of patients to the plaintiff hospital from outside the State of Arkansas. The conspiracy was based upon the refusal of the Washington County Medical Society to admit Dr. Frank Riggall to membership therein, resulting in denial to him of membership in the Arkansas Medical Society and the American Medical Association.
 
 
 4
 Excepting for the fact that Elizabeth Hospital, Inc., is the named plaintiff in the instant case and here alleged violations of the law of Arkansas as well as violations of the Sherman Anti-Trust Act, the complaint is virtually the same as that contained in a recent case wherein the plaintiff was Dr. Frank Riggall and wherein the defendants included all those named as defendants herein and in which this court, in Riggall v. Washington County Medical Society, 8 Cir., 1957, 249 F.2d 266, certiorari denied 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530, sustained the District Court's dismissal of the complaint. The same District Court granted motions to dismiss here — Elizabeth Hospital, Inc. v. Richardson, D.C.W. D.Ark.1958, 167 F.Supp. 155.
 
 
 5
 To sustain jurisdiction in the federal court it must be found that the allegations of the complaint, which for present purposes we must assume to be true, establish a claim under the law of Arkansas or that the complaint states a claim under the Sherman Anti-Trust Act. It has already been noted that the allegations of the instant complaint are, for all practical purposes, the same as the allegations contained in the complaint filed by Dr. Riggall in what might be termed the earlier case, Riggall v. Washington County etc., 249 F.2d 266. Therein, Dr. Riggall was the sole plaintiff. He sought to recover treble damages in the same amount as is sought by Elizabeth Hospital, Inc., in the present case. There, Dr. Riggall sought recovery because of alleged wrongful refusal of the Washington County Medical Society to admit him to membership. The alleged damage to the plaintiff here is likewise based on the Society's refusal of membership to plaintiff's Chief of Staff — the same Dr. Frank Riggall. In addition to the allegation of a conspiracy or combination in violation of the Sherman Anti-Trust Act, it was alleged that there was a conspiracy under the law of Arkansas to injure or damage the plaintiff by refusing Dr. Riggall and certain members of his staff membership in the Washington County Medical Society. Dr. Riggall's application for membership in the Society was rejected by the membership by a secret vote of 34 to 2. The by-laws of the Society are set forth in plaintiff's complaint. Among other things, they provide that the Society shall be the judge of the qualifications of its members. They also provide that the members shall vote upon all applications and that the elections shall be by secret ballot and that three-fourths of the votes of the membership present and voting shall be necessary to elect. The opinion of the District Court ably demonstrates that under neither the common nor statutory law of Arkansas was there a right of action spelled out in plaintiff's complaint, 167 F.Supp. 155. Citing Arkansas statutes dealing with monopolies, combinations and attempts to regulate or fix prices, it concluded, at page 162:
 
 
 6
 "Since no monopoly or attempt at monopoly is alleged or shown by the facts in the complaint, and since it is likewise apparent that the plaintiff is not being driven from competition, these statutes have no application."
 
 And at page 163:
 
 7
 "The action of the medical society and its individual members, whatever their motive may have been, was not action to attain an unlawful purpose or to use unlawful means in attaining a lawful purpose, absent some specific statutory requirement that all persons be admitted to membership.
 
 
 8
 "It is true that the plaintiff alleges that the refusal of the defendants to admit Dr. Riggall to membership has resulted in a number of other conditions unfavorable to the plaintiff hospital as well as to Dr. Riggall. It may be seriously doubted whether any of the numerous conditions alleged to have been caused by the denial of membership are proximate results of that action by the medical society. Compare Robinson v. Lull, D.C.Ill.1956, 145 F.Supp. 134, at page 137, where the court considered a series of facts similar to those presented here, and found no proximate connection between the acts of the defendants and the alleged injury.
 
 
 9
 "Assuming, however, that the conditions and injuries allegedly resulting from the medical society's denial of membership to Dr. Riggall were all proximate results of that action of the medical society, there is nevertheless no showing of any violation of state law in that action or any conspiracy to violate any state law. Most of the injuries said to result to the plaintiff and to Dr. Riggall from his inability to obtain membership in the medical society relate to the alleged loss of patients of the hospital. These assertions are in essence specifications of the allegation that the defendants `imposed a professional boycott upon the plaintiff, and thereby prevented the plaintiff from receiving great numbers of patients from outside the State of Arkansas and elsewhere.' These allegations, however, fall short of establishing a claim under Arkansas law."
 
 
 10
 Plaintiff here has utterly failed to demonstrate anything to the contrary and on this point cites but one case, Southwestern Publishing Co. v. Ney, 1957, 227 Ark. 852, 302 S.W.2d 538. Such case is no support for plaintiff's contention. It is this court's well established rule to accept the considered judgment of the trial judge on any matter of doubtful or disputed local law. Guyer v. Elger, 8 Cir., 1954, 216 F.2d 537, 540, certiorari denied 348 U.S. 929, 75 S.Ct. 342, 99 L.Ed. 728; Barnard v. Wabash R. Co., 8 Cir., 1953, 208 F.2d 489, 493; Buder v. Becker, 8 Cir., 1950, 185 F.2d 311, 315-316; Northern Liquid Gas Co. v. Hildreth, 8 Cir., 1950, 180 F.2d 330, 336. We concur in the trial judge's opinion that the complaint spelled out no right of action under the law of Arkansas.
 
 
 11
 Next for consideration is whether a claim under the Sherman Anti-Trust Act has been alleged. Essential to jurisdiction is that the conspiracy complained of be "in restraint of trade or commerce among the several states * * *." To establish this fact, plaintiff alleged that the wrongful exclusion of its Chief of Staff from the Washington County Medical Society so diminished his professional standing as to reduce the number of patients, both from within and without Arkansas, seeking treatment at plaintiff's hospital. Plaintiff also alleged that it purchases from outside the State of Arkansas medical equipment and supplies, etc., for its use in operating its hospital. However, this fact need not be considered here as plaintiff has failed to assert that the conspiracy complained of interfered with these purchases.
 
 
 12
 We think that the plaintiff's operation of a hospital, to include rendition of hospital services to some persons who came from outside the state, is no more engaging in interstate commerce than was Dr. Riggall in rendering medical services to persons who likewise came from other states. The fact that some of plaintiff's patients might travel in interstate commerce does not alter the local character of plaintiff's hospital. If the converse were true, every country store that obtains its goods from or serves customers residing outside the state would be selling in interstate commerce. Uniformly, the courts have held to the contrary. A.L.A. Schechter Poultry Corp. v. United States, 1935, 295 U.S. 495, 55 S. Ct. 837, 79 L.Ed. 1570; Lawson v. Woodmere, 4 Cir., 1954, 217 F.2d 148, 150; Jewel Tea Co. v. Williams, 10 Cir., 1941, 118 F.2d 202, 207; Lipson v. Socony-Vacuum Corp., 1 Cir., 1937, 87 F.2d 265, 267, certiorari granted 300 U.S. 651, 57 S.Ct. 612, 81 L.Ed. 862 certiorari dismissed 301 U.S. 711, 57 S.Ct. 788, 81 L.Ed. 1364.
 
 
 13
 Interference with intrastate activity cannot constitute a violation of the Sherman Act unless its effect on interstate commerce is both substantial and direct. A.L.A. Schechter Poultry Corp. v. United States, supra; Mandeville Island Farms v. American Crystal Sugar Co., 1947, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; Local 167 v. United States, 1933, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804. We observed in the earlier case at page 268, 249 F.2d:
 
 
 14
 "There is no allegation in the complaint remotely suggesting that the acts of defendants cast any burden upon interstate commerce. The mere fact that plaintiff at his location in Arkansas may be treating patients from other states who must travel interstate does not result in practic- ing his profession in interstate commerce, as the transportation of such patients is incidental. The practice of his profession as disclosed by the allegations of his complaint is neither trade nor commerce within Section 1 of the Sherman Anti-Trust Act, nor are there any allegations in the complaint indicating that the actions of defendants here complained of resulted in a monopoly within the provisions of Section 2 of the Act. Plaintiff has not been prevented from practicing his profession, but in the final analysis his complaint is that he could practice it more profitably but for the acts of the defendants." (Emphasis supplied.)
 
 
 15
 The case of Spears Free Clinic and Hospital for Poor Children v. Cleere, 10 Cir., 1952, 197 F.2d 125, is on almost all fours with the instant case. Therein the court stated, at page 126:
 
 
 16
 "The practice of the healing arts in Colorado, including chiropractic, is wholly local in character. The alleged conspiracy and the acts alleged to have been done in furtherance thereof had for their purpose and object the monopolization and restraint of purely local activities. No price fixing or price maintenance for professional or other services was involved. There was no intent to injure, obstruct or restrain interstate or foreign commerce. The mere fact that a fortuitous and incidental effect of such conspiracy and acts may be to reduce the number of persons who will come from other states and countries to the Spears Hospital for chiropractic treatments does not create such a relation between interstate and foreign commerce and such local activities as to make them a part of such commerce.
 
 
 17
 "To come within the purview of the Sherman Act the restraint of commerce or the obstruction of commerce must be direct and substantial and not merely incidental or remote." (Emphasis supplied.)
 
 
 18
 We think the complaint here is wholly lacking in a jurisdictional essential in that it fails to show that the conspiracy complained of had any restraining effect on interstate commerce within the meaning of the Sherman Anti-Trust Act.
 
 
 19
 Affirmed.