**DOCTORS, INC., a/k/a Doctors Hospital**

v.

**BLUE CROSS OF GREATER PHILA-DELPHIA a/k/a Associated Hospital Service of Philadelphia**

**and**

**Hospital Survey Committee, Inc.**

**Civ. A. No. 73-1057.**

United States District Court,
E. D. Pennsylvania.

June 8, 1973.

694

John F. Gough, Michael Malin, Philadelphia, Pa., for plaintiff.

Richard P. Brown, Jr., Miles W. Kirkpatrick, Philadelphia, Pa., for Blue Cross.

Henry Reath, Philadelphia, Pa., for Hospital Survey Committee, Inc.

## MEMORANDUM OF DECISION

GORBEY, District Judge.

Plaintiff, Doctors, Inc., a/k/a Doctors Hospital (Doctors), instituted this action against defendants, Blue Cross of Greater Philadelphia, a/k/a Associated Hospital Service of Philadelphia (Blue Cross), and Hospital Survey Committee, Inc. (HSC), under Sections 4 and 16 of the Clayton Act for preliminary injunctive relief and after trial for permanent injunctive relief and damages to redress injuries to Doctors, resulting from defendants' alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2).[1]

Plaintiff alleges inter alia that defendants' conduct with respect to nego-

---

1. Section 1 of the Sherman Act provides in relevant part:
   "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. . . ."

Section 2 of the Sherman Act provides in relevant part:
   "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor. . . ."

tiation, execution and enforcement of the current hospital agreement between Blue Cross, on the one hand, and plaintiff and other hospitals in the market area, on the other hand; defendants' conduct in refusing to deal with plaintiff after June 30, 1973, pursuant to the Hospital agreement now being negotiated with other hospitals; and defendants' conduct in inducing a group boycott by plaintiff's patients constitute:

(a) an illegal contract, combination and conspiracy to restrict and eliminate competition in hospital services in the market area;

(b) an illegal exercise of monopolistic power to control hospital services and competition in the hospital services in the market area;

(c) an illegal refusal to deal; and

(d) an illegal group boycott.

Defendants Blue Cross and HSC have filed motions to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure, alleging that the court lacks jurisdiction over the subject matter of the complaint. Argument on the motion was held on May 31, 1973. After consideration of the briefs submitted by the parties and the oral argument thereon, this court entered an order on June 4, 1973, granting the motion to dismiss and dismissing the complaint. This memorandum of decision is in support of said order.

Defendants allege in their motion to dismiss that this court lacks jurisdiction of the subject matter because the antitrust laws do not apply where the alleged illegal restraint is imposed solely upon the intrastate operations of a local business; and interstate commerce is involved only indirectly.

The jurisdictional allegations which plaintiff makes in its complaint relating to interstate commerce are the following:

1. The plaintiff transacts a major part of its business in interstate commerce and the acts alleged herein involve and affect a substantial volume of interstate commerce. Plaintiff purchases services and supplies in interstate commerce of almost $2,000,000 annually.[2] Its medical staff and patients are drawn from Pennsylvania and adjoining states.

2. Blue Cross Member Hospitals include hospitals in New Jersey as well as Southeastern Pennsylvania. Defendant Blue Cross has subscribers in New Jersey and Pennsylvania.

3. Reimbursement and payment for hospital services are made to Doctors and other area hospitals by third-party payers such as defendant Blue Cross and other insurance companies, which invest premiums and funds held for such reimbursement and payments in firms doing business in interstate commerce.

4. Reimbursement and payment for hospital services are made to Doctors and other area hospitals by the Social Security Administration (Medicare) as well as by the Pennsylvania Department of Public Welfare. All such funds are in the flow of interstate commerce.

5. Plaintiff Doctors Hospital's activities are typical of those of hospitals supplying hospital and health services throughout the United States, whether proprietary, non-profit or governmentally owned.

In addition to the five above allegations, plaintiff gives some statistics about the health service industry in the United States.

Conspiracies which are in restraint of trade under the Sherman Act may be divided in two categories. (1) Those in which the activities complained of involve transactions within the flow of in-

---

2. Although plaintiff alleges in its jurisdictional allegations in the complaint that plaintiff purchases services and supplies in interstate commerce of almost $2,000,000 annually, the affidavit of its president, J. G. Manley, in paragraph no. 11, states that during the year, 1972, Doctors Hospital purchased $233,430 in supplies from companies located outside Pennsylvania.

terstate commerce; and (2) Those in which the activities complained of are wholly intrastate in character or local. Las Vegas Merchant Plumbers Ass'n. v. United States, 210 F.2d 732 (9th Cir. 1954), cert. denied, 348 U.S. 817, 75 S. Ct. 29, 99 L.Ed. 645 (1954); United States v. Pennsylvania Refuse Removal Association, 242 F.Supp. 794 (E.D.Pa. 1965), aff'd, 357 F.2d 806 (3d Cir. 1966), cert. denied, 384 U.S. 961, 86 S.Ct. 1588, 16 L.Ed.2d 674 (1966); also, see United States v. Bensinger Co., 430 F.2d 584 (8th Cir. 1970).

■ When the activities complained of are wholly intrastate or local in character, in order to have a Sherman Act violation, it must be shown that the restraint directly and substantially affects interstate commerce. Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2d Cir. 1964); Page v. Work, 290 F.2d 323 (9th Cir. 1961), cert denied, 368 U. S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961); Elizabeth Hospital, Inc. v. Richardson, 269 F.2d 167 (8th Cir. 1959), cert. denied, 361 U.S. 884, 80 S.Ct. 155, 4 L.Ed.2d 120 (1959); Evening News Publishing Co. v. Allied Newspaper Carriers, 263 F.2d 715 (3d Cir. 1959); Spears Free Clinic and Hospital for Poor Children v. Cleere, 197 F.2d 125 (10th Cir. 1952). The Third Circuit follows the "substantial affect" theory when the alleged restraint involves transactions which are wholly intrastate or local in character. Evening News Publishing Co. v. Allied Newspaper Carriers, supra. It is under this theory, however, by which the plaintiff attempts to establish jurisdiction.

■ For purposes of this motion, we will assume as true plaintiff's factual allegations, but not conclusions, as to jurisdiction. Thus, we have plaintiff asserting for jurisdictional purposes that the fact that it purchases services and supplies in interstate commerce; its medical staff and patients are drawn from Pennsylvania and adjoining states; Blue Cross Member Hospitals include hospitals in New Jersey as well as in Southeastern Pennsylvania; defendant Blue Cross has subscribers in New Jersey and Pennsylvania; reimbursement and payment for hospital services are made to plaintiff and to other area hospitals by third-party payers such as defendant Blue Cross and other insurance companies which invest premiums and funds held for such reimbursement and payments in firms doing business in interstate commerce; reimbursement and payment for hospital services are made to Doctors and other area hospitals by the Social Security Administration (Medicare) as well as by the Pennsylvania Department of Welfare, such funds being in the flow of interstate commerce.

■ The activities listed show that the plaintiff indeed does engage in some transactions in interstate commerce. However, they are not sufficient to establish the jurisdiction of this court under the Sherman Act, as any affect of the alleged restraints upon interstate commerce would be indirect and insubstantial.

Although there are no Third Circuit cases under the Sherman Act involving hospitals, all circuits considering such cases against hospitals have followed the holding of Spears Free Clinic and Hospital for Poor Children v. Cleere, supra. In Spears, defendants moved to dismiss a complaint which alleged a conspiracy to prevent the operation of plaintiff's chiropractic hospital and to monopolize the "practice of the healing arts" in Colorado. The court ruled that:

"The practice of the healing arts in Colorado, including chiropractic, is wholly local in character. The alleged conspiracy and the acts alleged to have been done in furtherance thereof had for their purpose and object the monopolization and restraint of purely local activities." Id., 197 F.2d at 126

All of the other cases involving hospital and medical services are in accord with Spears, supra, holding that hospitals are strictly local intrastate businesses. United States v. Oregon State Medi-

cal Society, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952); Hospital Building Co. v. Trustees of the Rex Hospital, 1973 Trade Cases, ¶¶ 74, 428 (E.D.N.C. 1973); Elizabeth Hospital, Inc. v. Richardson, *supra*; Riggall v. Washington County Medical Society, 249 F.2d 266 (8th Cir. 1957), cert denied, 355 U.S. 954, 78 S.Ct. 540, 2 L.Ed.2d 530 (1958).

The court in *Spears, supra,* considered allegations similar to the ones in the instant case, that the supplies of the hospital and patients moved in interstate commerce. The court concluded:

"Here, the purpose and object of the conspiracy and of the means adopted to effectuate it, were to restrain the practice of chiropractic and to allocate to the medical profession the practice of the healing arts in Colorado. It is this exclusively local aim and not the fortuitous and incidental affect upon interstate and foreign commerce which gives character to the conspiracy. The affect upon interstate commerce was fortuitous and remote and not direct and substantial." Id., 197 F.2d at 128.

*Accord,* Elizabeth Hospital, Inc. v. Richardson, *supra,* and Hospital Building Co. v. Trustees of the Rex Hospital, *supra.* *See* Lieberthal v. North Country Lanes, Inc., *supra,* where the court analyzed:

". . . It has frequently been held, however, that the incidental flow of supplies in interstate commerce, . . . [citing cases] . . . the interstate travel of customers of the local enterprise . . . [citing cases] . . . the solicitation of business in other states for the local enterprise . . . [citing cases] . . . the utilization of interstate communication media . . . [citing cases] . . . or a location in an area of interstate activities . . . [citing cases] . . . do not in themselves suffice to transform an essentially intrastate activity into an interstate enterprise."
332 F.2d at 271.

As stated in Page v. Work, *supra:*

"The test of jurisdiction is not that the acts complained of affect business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business."

Viewing the instant case in light of the cases cited, it is clear that the alleged restraints are aimed at the wholly intrastate and local activities of the plaintiff and do not have a substantial affect on interstate commerce, and for this reason, this court lacks jurisdiction of the subject matter.

The plaintiff urges this court to accept a broadened theory of jurisdiction under the Sherman Act and cites as authority Rasmussen v. American Dairy Association, 472 F.2d 517 (9th Cir., Dec. 29, 1972). In that case the court stated:

"The reach of the Sherman Act is 'as inclusive as the constitutional limits of Congress' power to regulate commerce'. Report of the Attorney General's National Committee to Study the Anti-Trust Laws 62 (1955). As judicial construction of the commerce clause has expanded over the years to reflect changing evaluations of the necessary scope of the federal commerce power, so too has the reach of the Sherman Act.

"In short, the conduct of the defendant is within the jurisdictional reach of the Sherman Act if Congress can prohibit that conduct under the commerce clause."

While this may indicate expanded construction of the jurisdiction under the Sherman Act, the court in *Rasmussen* still found a "substantial affect" on interstate commerce: the same test applied in the Third Circuit.

The court in *Rasmussen* also stated at page 526:

"We recognize, however, that there must be some limit on the intrusiveness of Sherman Act regulation. Since every enterprise, however localized, inevitably has some effect, how-

ever remote, on the flow of commerce among the states, some 'localness', 'remoteness', or 'de minimus' factor must intervene or federal regulation is boundless.

". . . In this area perhaps more than in most, each case must turn on its own facts."

This court is of the opinion that the instant case is one where "some 'localness', 'remoteness', or 'de minimus' factor must intervene or federal regulation is boundless."

Therefore we must reject this argument. For the reasons stated herein, this court lacks jurisdiction over the subject matter of this action and the complaint must be dismissed.